ROBERT FULLERTON ET AL. v. CITY OF DES MOINES ET AL., BARBER ASPHALT PAVING COMPANY, Appellant.

**Municipal corporations:** STREET IMPROVEMENTS: ADVERTISEMENT FOR
1 BIDS. In this action to enjoin the defendant city from paying a claim for a street pavement where it was contemplated that the new pavement should be laid upon the existing concrete foundation, and the advertisement for bids so stated and that the improvements were to be according to plans and specifications which required the old foundation to be brought to subgrade, and that the new concrete necessary for resurfacing the old foundation be measured in a manner satisfactory to the city engineer, and that separate bids be made for new paving on the old foundation and for extra concrete, the advertisement sufficiently showed that the extra concrete was to be placed on the old foundation to bring it to subgrade.

**Same:** COMPENSATION FOR PUBLIC IMPROVEMENT: PRIOR ADJUDICATION.
2 The fact that prior to the institution of this action to enjoin defendant from paying a claim for street improvement property owners had instituted actions to enjoin the improvement, on the ground that the street grade would be lowered by the proposed improvement, which actions were dismissed for the reason that the specifications for the new work required the contractor to bring the surface to subgrade as a part of the new improvement, did not go to the question of whether the contractor was to receive extra compensation for bringing the street to grade and were not an adjudication of that question in this action.

Same: COMPENSATION: EXTRAS.  Where a contract for paving a street with asphalt exacted first the laying of concrete on the old foundation to bring the surface to subgrade, 'and provided that there should be no compensation for extras, the laying of the concrete, an essential portion of the work for which separate bids were received, was not extra.

Same: CONTRACT FOR PUBLIC IMPROVEMENT: REFORMATION.  Where all the negotiations for paving a street on the old foundation with asphalt, and bringing the foundation to subgrade with additional concrete, were on the theory that the necessary concrete was not determinable at the letting of the contract; that compensation therefor should be fixed separate from that for laying the asphalt; and the resolutions, proposals and specifications were in harmony with such a course and bids were invited with the understanding by all parties that separate prices were to be paid for grading the foundation and laying the asphalt, but in making the contract the intention of the parties in this respect was not expressed, the court had power to reform the contract to give it the effect intended; and it is no objection to such power that one of the parties was a municipal corporation.

Same.  A city may treat its contract for a public improvement as already having been reformed to conform to the real intent of the parties, and it may allow a claim for extra compensation on such basis and thus avoid the expense of litigation incident to the reformation.

Weaver and Sherwin, JJ., dissenting.

*Appeal from Polk District Court.*—HON. W. H. MC-HENRY, Judge.

TUESDAY, MAY 3, 1910.

ACTION in equity to enjoin payment of a claim allowed by the City Council of Des Moines in favor of the Barber Asphalt Paving Company.  Decree was entered as prayed, and the paving company appeals.—*Reversed.*

*Read & Read,* for appellant.

*Baily & Stipp,* for appellee.

LADD, J.—The Barber Asphalt Paving Company entered into a contract with the city of Des Moines to lay asphalt pavement on East Fifth street and East Maple street. The work having been completed, the company received paving certificates in payment to the extent of $1.40 per cubic yard, and presented its claim for resurfacing the old foundation as per its bid of $4 per cubic yard for "extra concrete," alleged to have been furnished in the construction of the improvements, in the sum of $3,492.40. This claim was investigated by a committee of the city council, and, upon favorable report, was allowed by that body. The plaintiffs are taxpayers of the city, and in this action seek to enjoin the payment of such sum on the ground that the city is not liable therefor, and its allowance was unauthorized by law. The streets had been paved with wooden blocks laid on concrete foundations, and, as the blocks had decayed, it was proposed to replace them with asphalt pavement on the same foundations. Prior to the removal of the blocks, definite information concerning the condition of the concrete below was not attainable, and, aside from the written matter hereinafter referred to, the record leaves no doubt but that the design of the board of public works and city engineer, as well as of the contractor, was that the $1.40 per square yard to be paid for "sheet asphalt paving on the old concrete foundation" should not include the cost of resurfacing the old foundation with concrete so as to bring the pavement to the established grade. All so testify, and the work was prosecuted with that understanding. But appellees say the contract required the paving company to do all the work and furnish all the material at $1.40 per square yard, and therefore such testimony, being contradictory of its terms, was not admissible; while the paving company contends that the evidence was proper to be considered as aiding in the interpretation of the agreement, and, in any event, in support of the cross-petition praying

for its reformation. To determine the issues, it will be necessary to refer to the proceedings somewhat in detail.

The resolutions of necessity were adopted September 8, 1902, and, in so far as material, declared that it was deemed advisable and necessary to make improvements by laying "an asphalt pavement" upon the present cement concrete one inch asphalt binder course, and one and one-half inches asphalt wearing surface, described the material to be used, and held the contractor to guarantee the pavement for seven years. The board of public works was directed to advertise for proposals and "enter into contracts for improving in the manner specified in said resolution of necessity as passed by laying an asphalt pavement upon the present cement concrete, one inch asphalt binder course and one and one-half inches asphalt wearing surface." The advertisement of the board of public works called for sealed proposals for the "improvements as per plans and specifications now on file in the office of the board," and in addition to the usual form provided that the pavement should "be laid on the present cement concrete foundation." The plans and specifications were printed, and such as were generally used for asphalt and other pavements in the city. They required: (1) That all bidders examine them carefully. (2) That all bids be made on the printed form furnished by the city. (3) That "bids must be made upon all the printed items not erased by the board of public works and city engineer from the printed proposal form, and the price so bid for such items shall include all material and labor necessary to make such items complete in the work." (4) That the street be brought up to grade by the city, the contractor to remove stones, earth and other materials which occupy the space to be filled by the pavement and put the street at subgrade "before any paving material shall be laid thereon." (5) That when old pavement was to be replaced, "removing such old pavement from the street, care shall be taken not to disturb or

injure the foundation. If such old paving be entirely re-
moved, it shall be the duty of the contractor to bring the
street to the proper subgrade and to a true crown accord-
ing to the direction of the city engineer at the expense of
the contractor." (6) That "The new concrete necessary
for repairing or resurfacing old foundation shall be meas-
ured in boxes or barrows of a size and shape satisfactory
to the city engineer or in any manner he may direct."
(7) That "It shall be the duty of the inspector appointed
by the city to keep a correct account of the amount of
cement used and the square yards of concrete laid each
day, and send his report daily to the board of public
works." (8) That "All materials, machines, tools and
labor necessary to fully complete the work shall be fur-
nished by the contractor." (9) That "The contractor
will be held responsible for the faithful execution of the
contract, and in the interpretation and determination of
questions which may arise concerning the meaning and
intent of the plans and specifications, the measurements
thereof, the decision of the board of public works and city
engineer shall be final." (10) That "Any work not herein
specified, but shown on plans, or *vice versa,* or which may
be fairly implied as included in this contract, of which
the board of public works and city engineer shall be
judge, shall be done by the contractor without extra
charge." (11) That "The measure of all paving laid
shall be upon the basis of square yards actually paved."
(12) That the asphalt surface "shall consist of a binder
course of one inch in thickness and wearing course of
one and one-half inches," and these shall be laid on a
concrete foundation.

As a part of the specifications a form of proposal,
such as was submitted to and accepted by the board of
public works for each street save the descriptions bid, was,
except price, as follows:

Proposal for Sheet Asphalt Pavement.

To the Board of Public Works of the City of Des Moines:

The undersigned hereby propose to furnish all the material, tools, machinery, and labor necessary for the construction of the sheet asphalt paving hereinafter designated, and to construct said sheet asphalt paving upon the streets or parts of streets indicated in the specifications on file in the office of the board of public works of the city of Des Moines and designated as . . ., in the city of Des Moines, Iowa, and to fully complete the same in accordance with the terms and conditions of the form of contract and specifications and plans for said improvements on file as above stated, under the direction and to the entire satisfaction of the said board of public works and city engineer of the city of Des Moines, at the following prices, to wit:

Sheet asphalt paving on old concrete foundation, per
  square yard ............................................$1.40
For extra concrete, per cubic yard................ 4.00
For any extra gravel, per cubic yard.............. 1.40
For any extra sand, per cubic yard................ 1.20
For extra grading, per cubic yard................. .27
For resetting old curb, per lineal foot............ .10

It is to be observed that proposals were required on each item in the printed form of proposals, that when an old foundation was to be resurfaced to bring the pavement to grade, the concrete used was to be "measured in boxes or barrows of a size and shape satisfactory to the city engineer or in any manner he may direct;" that the meaning and intent of the plans and specifications was to be determined solely by the city engineer and board of public works, who were also to determine what was included therein. Nothing in the plans and specifications, save as appears in above subdivision five, providing that bringing a street up to subgrade should be at the expense of the contractor, is contradictory to the interpretation given by the city officials, and that is neutralized by the circum-

1. MUNICIPAL CORPORATIONS: street improvements: advertisement for bids.

stance that it relates to pavement on new, as well as old,
foundations, and is immediately followed by a provision
for measuring "new concrete necessary for repairing or
resurfacing old foundation." Why measure this if it was
not to be paid for according to measure? Looking through
these several papers, bidders might well be in doubt as to
whether proposals were to be received separately for re-
surfacing the old foundation with concrete and for the
pavement proper, and the paving company was justified
in calling on the board of public works and city engineer,
whose decision would be final in the interpretation of all
questions which might "arise concerning the meaning and
intent of the plans and specifications," to ascertain how
the proposals were to be made. He was advised that bids
were being taken "on the binder and wearing surface,"
and also on the concrete put on the old foundation per
cubic yard. His proposals were made accordingly. This
is strongly confirmed by the circumstance that proposals
were received by the board of public works at the same
time for asphalt pavement with new foundation on East
Twelfth street at $1.975 per square yard, and on Walnut
street at $1.96 per square yard, and contracts let to the
same company. This included laying a concrete founda-
dation five inches deep, which, at $4 per cubic yard, would
cost $.55$^5/_9$ per square yard. In resurfacing and bringing
East Fifth street to subgrade concrete averaging five and
one-tenth inches deep was required at a cost computed at
$4 per cubic yard or $.56$^3/_5$ per square yard, and that
required on East Maple street was three and three-eighths
inches deep at a cost of $.42$^1/_5$ per square yard. So that
the prices of the binder and wearing surface correspond
with that exacted in paving on new foundations.

Up to the time of entering into the written contract,
then, all parties understood that the paving company was
to receive $1.40 per square yard for laying the binder and
wearing courses of asphalt, and $4 per cubic yard for con-

crete used in resurfacing. The bid was made and accepted with that understanding, and both parties supposed this in accord with the resolutions of the city council, the advertisement of the board of public works, the plans and specifications, and the proposals, which, as seen, were subject to such construction. But it is said there was nothing in the proposal to indicate where or for what the "extra concrete" was to be used. The published proposal stated that the asphalt was to be laid "on the present cement concrete foundation." It also specified that the improvements were to be "as per the plans and specifications," and these required that the old foundation should be brought to subgrade; that the new concrete necessary for resurfacing said foundation "be measured in boxes or barrows of a size and shape satisfactory to the city engineer or in any manner he may direct," and that separate bids be made for "asphalt paving on old concrete foundation," and "for extra concrete per cubic yard." What was to be inferred from these provisions? Plainly enough that the "extra concrete" was that to be placed on the old foundation in bringing it to subgrade, and this was the interpretation of the city officials and the contractor when proposals were received, during the progress of the work and in the final settlement. It is impracticable to set out all the details in advertisements for bids, and for this reason, it is enough if bidders are referred therein to the plans and specifications on file. *Owens v. City of Marion,* 127 Iowa, 469; *Arnold v. City of Ft. Dodge,* 111 Iowa, 152. At least this is so in the absence of timely objection, and of any claim that fraud has been practiced. The proposal did not exact the form of the bids to be received, save by reference to the plans and specifications, and, as we think, that submitted was in accordance with the requirement therein prescribed.

Before the contract was executed, two abutting lot owners instituted separate suits against the city and the

paving company to enjoin the making of the improvements
for that the grades of the streets would be
lowered by laying the two asphalt courses on
the old foundations, and no resolution or or-
dinance had been adopted changing the es-
tablished grades.    This was denied by the defendants
therein, and on hearing the court dismissed the petition
for the reason that the portion of the specifications set
out in subdivision five above required the contractor to
bring the surface to subgrade before the asphalt courses
were laid.    No issue relating to the price was involved
in either case.    Possibly one of the attorneys of the city
exhibited the form of contract subsequently executed, but,
if so, it was merely as indicating an intention to bring
the street when paved to the established grade.    The record
is void of evidence that any one was misled thereby, and,
as the adjudication did not touch the matter of cost, they
do not sustain the plea of estoppel interposed by plain-
tiffs.    But for the terms of the contract, then, there could
be no doubt as to the liability of the city for the payment
of the concrete laid in resurfacing the old foundation.

2. SAME: com-
pensation for
public im-
provement:
prior adjudi-
cation.

The formal contract was executed October 22, 1902.
Section 866 of the Code required this to be prepared by the
city solicitor, and made by the board of public works with
the lowest responsible bidder.    Section 867,
Code.    And before the work is done a cer-
tified copy of the contract must be filed with
the city clerk.    Section 812, Code.    But the conditions of
the contract are necessarily determined by the resolution
of necessity, as required by section 810 of the Code, the
ordinance or resolution directing the improvement (section
811, Code), the plans and specifications adopted therefor
(sections 666, 865, 868, Code), and the published pro-
posals and bid submitted.    Had they been so drawn, there
would have been no occasion for this controversy.    Instead,
by its terms the contract seems to exclude any compensa-

3. SAME: com-
pensation:
extras.

tion for the extra concrete placed on the old foundation to bring it to subgrade. It first recites that the paving company

> agrees to furnish at its own expense all necessary material and labor and to construct the improvements hereinafter designated in a thorough, substantial and workmanlike manner and in strict compliance with the requirements of its contract and of the specifications and plans. . . . Paving East Fifth street from the north line of Grand avenue to the south line of Maple street about four thousand eight hundred and fifty-six square yards, or more or less of asphalt pavement. The party of the first part shall begin said work at such point as the board of public works may direct and shall conform to the directions of said board as to the order in which the several parts of this work shall be done and the mode of performing the same. [Like clauses relating to East Maple street are included.] . . . The party of the first part further agrees to perform said work in strict accordance with this contract and with the plans and specifications hereinbefore referred to, at the price one dollar and forty cents ($1.40) per square yard, which shall be in full compensation for the cost of the entire work, and the city of Des Moines shall not be liable to said party of the first part for extras of any kind or for any damage which he may sustain by coming in contact with rock, sand, water, or any unforeseen obstacle or material, it being expressly understood that the contract price above specified shall be in full for all work done under this contract.

Appellant contends that this contract should be construed as having reference to the two courses of asphalt only. If so, the laying of the concrete and cost thereof could not have been included therein. Yet by its terms the improvement is to be in a workmanlike manner and according to the specifications, both of which would be impossible without resurfacing the old foundation. Moreover, the price named is fixed as "full compensation for the cost of the entire work," and "in full for all work done under this contract." When fairly construed, it

can not be said that the contract does not include everything to be done in the making of the improvements contemplated. The contract, like the plans and specifications, appears to be a stock form made use of generally in the prosecution of the work of improving the city thoroughfares, and probably was not selected or prepared with reference to the pavements in question. As seen, it expresses the intention of neither party in the matter of compensation. That portion of the bid for extra concrete necessary to bring the old foundation up to subgrade is entirely omitted. True, a clause excluded compensation for "extras" of any kind, but this, as the context clearly shows, had reference to "extras" in the ordinary sense, and not to an essential portion of the material and labor for which separate bids had been taken. Ordinarily, according to the lexicographers, the word carries the idea of something beyond, in addition to, or in excess of, what is due usually or necessarily. And in a contract it denotes something done or furnished in addition to, or in excess of, the requirements of such contract; something not required in the performance of the contract. *Shields v. N. Y.*, 84 App. Div. 502 (82 N. Y. Supp. 1020); *Casgrain v. Milwaukee,* 81 Wis. 113 (51 N. W. 88).

As seen, laying of the concrete was exacted by the terms of the contract, and was in no sense "extra," though so designated in the bid submitted to the board of public works. We have then this situation: All the preliminary negotiations proceeded on the theory (1) that the amount of concrete necessary to bring the old foundation to subgrade was not ascertainable prior to letting the contract; (2) that compensation therefor should be fixed separate and apart from that of laying the two courses of asphalt and in a way to obviate payment for more than required; (3) that the resolutions, proposals, and specifications were in harmony with such a course;

4. SAME: contract for public improvement: reformation.

and (4) the bids were exacted with the distinct understanding of all parties that separate prices be paid for the asphalt courses and for resurfacing the old foundation with concrete separately, but in the preparation of the contract subsequently executed the intention of the parties, as thus manifested, was not expressed. That in such a case a court of equity will intervene and reform the instrument so as to give effect to what was intended is no longer an open question in this state. *Nowlin v. Pyne,* 47 Iowa, 293; *Reed v. Root,* 59 Iowa, 359; *Lee v. Percival,* 85 Iowa, 639. That one party is a municipal corporation can make no difference. It should conform to its contracts as actually made precisely the same as private corporations or individuals. It has had the advantages accorded by statute of prescribing the character of the improvements to be made, and of competition in the costs of construction. Every statute relating thereto has been complied with save that the preliminary proceedings have not been fairly represented or embodied in the written agreement. A city has no more right to avail itself of an unconscionable advantage to a mistake of this kind than an individual or private corporation, and its agreements are quite as susceptible to reformation, unless some statute be in the way.

Evidently this was the view taken by the city council, for in allowing the paving company's claim, it treated the contract as though reformed to represent the agreement as made. The city had the right to

**5. SAME.**

do this, and thereby avoid the litigation incident to the reformation of the contract. As seen, the claim was just, and was rightly allowed from the general fund. *Shelby v. Burlington,* 125 Iowa, 343; *Ottumwa B. & Co. v. Ainley,* 109 Iowa, 391; *Corey v. Ft. Dodge,* 133 Iowa, 666. While ordinarily claims of this kind are the subject of just suspicion, and are to be scrutinized cautiously, yet when meritorious, as this one is demon-

strated to have been, the city officials are to be commended for their prompt and full adjustment.

A decree dismissing the petition should have been entered.—*Reversed*.

WEAVER, J. (dissenting).—For reasons quite fully set forth by me in an opinion filed upon the original submission of this case, and reported in 115 N. W. 607, I dissent from the conclusion now reached by the majority. Without burdening this dissent with a repetition of the statement and discussion there found, I have only to say that I am still satisfied with the correctness of the decision there announced, and must therefore decline to follow the court in receding from what I deem a sound position to one which it must ultimately abandon if we are to have any effectual safeguard against grave abuses in the matter of contracts for the construction of municipal improvements. In the case before us the contracting company, presumably by underbidding its competitors, secured the award of a job for constructing a large amount of paving. When the work was done it asked, and the city council allowed to it, compensation far in excess of the sum for which it had specifically and expressly undertaken to perform the work. That action the majority opinion approves and upholds, on the theory that, while the contract as executed by the parties is precisely what the plaintiff asserts it to have been, it did not in fact embody their mutual understanding as to the compensation to be paid and the basis of its computation. If this is to be the rule, what is the use of having any contract? What indeed is the use of enacting statutes for the protection of the taxpayer, if a contractor by underbidding may shut out his competitors, and then demand and receive in excess of the contract price whatever the city council in its liberality may see fit to concede to him? What guaranty is left for fair competition in the letting

of contracts? How are the property owners and taxpayers to know what burdens are being placed upon their shoulders until it is too late for adequate redress? I am not saying or in any manner suggesting that fraud or intentional wrongdoing is involved in this particular case, but I do say that the system to which we here give our approval is inconsistent with the spirit and purpose of our laws regulating the conduct of municipal business, and that by loosening the tension of legal restraint it tends to make fraud both easy and profitable.

In my judgment the decree appealed from should be affirmed.

SHERWIN, J., concurs in the foregoing dissent.