RANKIN et al. v. NOEL, County Com'r, et al. (No. 5662.)

(Court of Civil Appeals of Texas. San Antonio. April 26, 1916.)

1. HIGHWAYS ⟨⟩23 — OPENING — AUTHORITY OF ROAD COMMISSIONER—STATUTE.
   Under Acts 27th Leg. c. 49, the road law for Fayette, Frio, and Uvalde counties, where the commissioners' court of Frio county never ordered the road commissioner of a precinct to open a road of the second class, merely approving and adopting the report of the jury of view as to the laying out of the road, correcting the part referring to damages, and ordering that all landowners be allowed a sum per acre for all land taken, later ordering issuance of warrants therefor, such road commissioner had no power to open such a road, since the statute constitutes each county commissioner, ex officio road commissioner for his precinct, the agent of the commissioners' court, and gives him no independent authority.
   [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 31–34, 36; Dec. Dig. ⟨⟩23.]

2. COUNTIES ⟨⟩53 — CONTRACTS — BINDING FORCE—OMISSION TO RECORD.
   Contracts or agreements made by municipalities are valid and binding only when entered upon the minutes, except that where an order of the commissioners' court of a county has been passed, the omission of the clerk to record it will not render it void.
   [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 66–70; Dec. Dig. ⟨⟩53.]

3. HIGHWAYS ⟨⟩53(1)—ESTABLISHMENT—ORDER OF COUNTY COMMISSIONERS—NECESSITY FOR VOTE.
   A mere conference by county commissioners, and a verbal agreement to open a road, without a vote being taken, does not constitute an order to open the road and is invalid, since an order must be voted by the commissioners.
   [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 155–158, 161, 162; Dec. Dig. ⟨⟩53(1).]

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. COUNTIES ⫛53—OPENING OF ROAD—ORDER OF COMMISSIONERS—SUFFICIENCY OF EVIDENCE.**

In mandamus proceedings against a county commissioner, ex officio road commissioner for his precinct, to compel him to open a second-class road, a finding that the commissioners' court of the county made no order that the road be opened was justified, where no such order was shown by the minutes; other orders relating thereto being shown.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 66–70; Dec. Dig. ⫛53.]

**5. MANDAMUS ⫛151(1)—NECESSARY PARTIES.**

In mandamus proceedings against a county commissioner, ex officio road commissioner for his precinct, to compel him to open a second-class road, the landowners affected and the county are necessary parties, so that the county commissioners are properly permitted to intervene.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 291; Dec. Dig. ⫛151(1).]

**6. MANDAMUS ⫛151(1)—RIGHTS OF PERSONS NOT PARTIES.**

Mandamus will not issue, where it appears that it will affect persons not before the court whose rights have not been determined in a previous suit.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 291; Dec. Dig. ⫛151(1).]

**7. HIGHWAYS ⫛70—ORDER OF COUNTY COMMISSIONERS — LAYING OUT ROAD — ALTERATION—STATUTE—"PUBLIC ROAD."**

Where no road has been opened, but merely designated by a jury of view, no work having been done, and no one ever having used it, an order of the commissioners' court of a county, setting aside their order that a second-class road be opened, and ordering it laid out in another location, does not come within Vernon's Sayles' Ann. Civ. St. 1914, art. 6861, providing that no public roads shall be altered or changed except to shorten the distance, unless by unanimous consent of all commissioners, since it was not a "public road" within the statute, which no road can be until it is opened to the public and passes under the control of the county or state.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 234, 235, 238; Dec. Dig. ⫛70.

For other definitions, see Words and Phrases, First and Second Series, Public Road.]

**8. HIGHWAYS ⫛53(1)—ROADS—THIRD-CLASS ROAD—GATING.**

Since only a third-class road can have gates erected across it, an order, making it optional with landowners as to whether they shall gate a road, shows the creation of a third-class road.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 155–158, 161, 162; Dec. Dig. ⫛53(1).]

Appeal from District Court, Frio County; J. F. Mullally, Judge.

Application for writ of mandamus by W. D. Rankin and others against E. W. Noel, county commissioner, and others. From a judgment refusing the writ, plaintiffs appeal. Affirmed.

Kercheville & Brown, of Devine, for appellants. S. T. Dowe and S. T. Phelps, both of Pearsall, for appellees.

FLY, C. J. This is an application for a writ of mandamus by appellants against E. W. Noel, county commissioner of his county, to compel him to open a certain second-class road, described therein. It was alleged that on or about May 22, 1914, the commissioners' court of Frio county passed an order, directing appellee, Noel, who was the commissioner of precinct No. 2, in which the road was situated, to open to the public a road of the second class, at least 40 feet wide, beginning at a certain point and continuing to the line of Frio and Atascosa counties; that the commissioners' court had power to make such order; that under the provisions of a special road law for Fayette, Frio, and Uvalde counties, it became the duty of the appellee, Noel, to open the road in question; that he had refused so to do; that appellants were parties at interest in having said road opened; and that they had no adequate remedy at law. Noel did not answer, and on appearance day the county judge and three commissioners of Frio county were permitted to intervene in the cause. After hearing the evidence, the writ of mandamus was refused.

[1] Under the terms of the road law for Fayette, Frio, and Uvalde counties, passed by the Twenty-Seventh Legislature (page 96, Laws of 1901), each commissioner of those counties became ex officio road commissioners of their respective precincts, who were empowered—

"under the direction of the commissioners' court," to take "charge of all teams, tools, machinery and appliances, * * * and it shall be their duty, under such rules and regulations as the commissioners' courts shall prescribe, to superintend the laying out of new roads or changing of established roads, and the building or repairing of * * * public roads, the control over all road overseers and such other matters pertaining to public roads and bridges in their respective precincts as the commissioners' courts may require." Section 1.

The law in question does not seek to interfere with the powers and duties conferred upon commissioners' courts by article 6860, Vernon's Sayles' Statutes. In that article it is provided that commissioners' courts—

"shall have full powers and it shall be their duty to order the laying out and opening of public roads when necessary, and to discontinue, or alter any road whenever it shall be deemed expedient as hereinafter prescribed."

The commissioners' court is the governing body of each county, and the powers and duties conferred upon that court could not be taken away and conferred upon some member of the court. No attempt was made to curtail the powers of the commissioners' court by increasing those of a single commissioner, but all his duties are to be performed "under such rules and regulations as the commissioners' courts shall prescribe" and "as the commissioners' courts may require." He is an arm of the court, moved as the court may order and prescribe. No authority has the power to lay out a public road except the commissioners' court, and when it is laid out, it cannot be opened except by an order of that court. It follows that E. W. Noel had no

authority to lay out and open a public road unless such power was conferred upon him by the commissioners' court of Frio county. That power was never conferred upon him, although it is so alleged in the petition. The statement of facts shows that a jury of view was appointed by the commissioners' court on October 13, 1913, on a petition for a second-class road, and a report was made by them, and on January 15, 1914, the court approved and adopted the report of the jury of view as to the laying out of the road, but neglected the part referring to damages, and ordered that all landowners, over whose land the road was to pass, be allowed the sum of $20 an acre for all land taken for the road. Afterward, there was an order made to issue warrants to the landowners for sums reported by the surveyor. These are the only orders shown by the minutes of the commissioners' court, and this court is justified in concluding that no order was ever made by the commissioners' court to have the road opened, and consequently Noel had no authority to open the road.

The object of this action was to compel Noel to open the road, and no effort was made to obtain a writ compelling the commissioners' court. To open the road without an order for the opening would have been to force him to act in defiance of the commissioners' court and contrary to the law of the state. The district court could not compel such action, and on that ground was justified in refusing the mandamus.

[2-4] The rule formerly prevailed that contracts or agreements made by municipal corporations, county or city, are only valid and binding when entered upon the minutes. This rule has been modified. Fayette County v. Krause, 31 Tex. Civ. App. 569, 73 S. W. 51. The modification is that where an order has been passed, the omission of the clerk to record it will not render it void. If an order is in fact passed by a commissioners' court, the failure to record it would not affect its validity under our decisions. But it would be necessary to prove the passage of the order before it could have any effect. Ewing v. Duncan, 81 Tex. 230, 16 S. W. 1000. A mere conference by the commissioners and a verbal agreement to do a certain thing without a vote being taken would not constitute an order and would not be valid. There must be an order voted by the commissioners. Fayette County v. Krause, herein cited. In speaking of the modification of the rule as set out in Ewing v. Duncan, the Court of Civil Appeals said:

"Whatever may be the extent to which those decisions modify the rule as to the necessity for the entry in the minutes of orders made by a commissioners' court, they in no way modify the rule that all contracts made by a county, to be valid and binding, must be made by or under authority of an order of the commissioners' court."

The testimony of the clerk tends to show a mere discussion of opening the road, but no vote. Dixon, an interested party, would not swear positively to a vote, and neither would Gore. All other orders were entered on the minutes, and it was singular, if the very important order to open the road was ever passed, that no record of it was ever made. The court was justified in finding that it was not made.

[5, 6] The landowners and the county were necessary parties to the suit, and the court did not err in permitting the commissioners' court to intervene in the suit. The county had a vital interest in the suit, and it should not have been compelled to pay damages for a road without being heard in the matter. A mandamus will not be issued where it appears that it would affect persons who are not before the court, and where the rights of those persons have not been determined in a previous suit. Commissioner v. Smith, 5 Tex. 471; Watkins v. Kirchain, 10 Tex. 375; Tabor v. Commissioner, 29 Tex. 508. As said by the court in the last-named case:

"If there were no other objection to the application for the writ of mandamus in this case, the fact that there are other claimants to the land, who are not parties to this proceeding, would furnish grounds for refusing it. The averment that their claims are void will not relieve the matter of the difficulty; for this court will not undertake to adjudicate their claims, whether valid or not, when the claimants are not parties to the suit."

See, also, Railway v. Jarvis, 80 Tex. 456, 15 S. W. 1089; City of Austin v. Cahill (Tex. Civ. App.) 88 S. W. 536.

James L. Curry testified that the road sought by appellants would go through the middle of his land, and would about ruin it, and that he had not been paid or offered anything for his land by the county. He was vitally interested in the matter of opening the road, and yet he was not a party to the suit. Cowley had a suit for injunction pending to prevent opening the road through his land. He was interested, and yet he was not made a party to the suit.

[7] The order of the commissioners' court setting aside the former order and ordering the road laid out in another different place does not come within the purview of article 6861, Vernon's Sayles' Statutes, which provides that no public roads shall be altered or changed except for the purpose of shortening the distance, unless the change is made by unanimous consent of all the commissioners elected, because no road had been opened. It was not a public road until it was opened for travel. The road in this instance had merely been designated by a jury of view whose report had been adopted, and no work had been done on it, and no one ever used it. It was not a public road within the terms of the articles to which reference is made. There can be no public road until it is open to the public and passes under the control of the county or state. Elliott, Streets and Roads, § 9, p. 12.

[8] The road in question was intended to

be of the second class, and the statute defines a second-class road as one—

"clear of all obstructions and not less than thirty feet wide; stumps six inches and over in diameter to be cut down to six inches of the surface and rounded off; and all stumps less than six inches in diameter to be cut smooth with the ground; all causeways to be made at least sixteen feet wide."

It is not pretended that a bush or tree had been cut or a stone disturbed on the road viewed by the jury, or that any human being has ever used it as a public road. It has never come into existence as a road, but is in an inchoate and dreadful state of "unpreparedness." Article 6861 was enacted to protect the public from the change of a road that had come into existence, and not from something from which a public road might, in the process of time, be evolved. That the commissioners' court, which authorized a second-class road, never expected it to develop into its second-class condition is shown by the fact that permission was given to not build fences along it that gates might be placed across it. Says the order: ＼

"Said road to be and the same is not required to be laned, but it is left optional with said landowners as to whether they shall gate the road, or lane the same at their expense."

With those words the road was changed from the second class to the third class, the latter being the only one that can have gates erected across it. And yet in the face of that order appellants sought to compel the commissioner to open up a second-class road. The court did not err in refusing the writ of mandamus.

The judgment is affirmed