HEADLEE et al. v. FRYER, County Judge, et al. (No. 8151.) *

(Court of Civil Appeals of Texas. Dallas. Nov. 23, 1918. Rehearing Denied Jan. 18, 1919.)

1. COUNTIES ⬅117 — CONTRACTS — COMMISSIONERS' COURT—COMPETITION—STATUTE.

Under Acts 35th Leg. c. 141 (Vernon's Ann. Civ. St. Supp. 1918, arts. 2268a, 2268b), forbidding certain contracts by commissioners' court except upon notice inviting competition, the court must be prepared to present to bidders some independent and concrete statement of work required to be done and must take such steps as are reasonably and fairly calculated to carry out the act.

2. STATUTES ⬅183 — CONSTRUCTION—INTENTION.

A statute is to be extended to cases not within the words but within the purpose thereof, as a thing within the intention of the legislators is as much within the statute as if it were within the letter.

3. STATUTES ⬅181(1) — CONSTRUCTION — DUTY OF COURT.

While it is for the Legislature to make a law, it is the court's duty to "try out the right intendment" of statutes upon which they are called to pass and to ascertain and enforce them according to their intendment.

4. COUNTIES ⬅116 — CONTRACTS — DUTY OF COMMISSIONERS' COURT—STATUTES.

Under Acts 35th Leg. c. 141 (Vernon's Ann. Civ. St. Supp. 1918, arts. 2268a, 2268b), forbidding commissioners' court to make certain contracts except upon notice inviting competition, the court, which on the day advertised for receiving bids and upon adjournments resolved to erect a courthouse, employed an architect, adopted his tentative plans, and contracted for its construction subject to modifications, did not comply with the statute.

5. COUNTIES ⬅117 — CONTRACTS—PUBLICATION OF NOTICE OF INTENT TO VOID CONTRACT.

Under Acts 35th Leg. c. 141 (Vernon's Ann. Civ. St. Supp. 1918, arts. 2268a, 2268b), forbidding commissioners' court to enter into certain contracts except upon notice inviting competition, where published notice inviting bids on February 14th, but where recorded copy thereof fixed the date as February 4th, an award of contract on February 13th did not

comply with statute, and contract was void for want of notice.

**6. COUNTIES ⟐⟐53—RECORDS OF COMMISSIONERS' COURT—VERITY.**

The verity of proceedings of commissioners' court, as disclosed by its minutes, may not be challenged by testimony of a commissioner indicating the court's intent that an approved minute entry should provide for receiving bids for county work on a certain day, as stated in the minutes, as the court, being a court of record, speaks through its minutes.

**7. COUNTIES ⟐⟐53—COMMISSIONERS' COURT—AMENDMENT OF RECORD.**

The proper way to amend the minutes of the commissioners' court when they fail to speak the truth is by motion made in that court, and not by allegations and proof in another tribunal in which a litigation concerning its orders may arise.

**8. COUNTIES ⟐⟐127—CONTRACTS—MODIFICATION—POWER OF COMMISSIONERS' COURT.**

The commissioners' court, having authority to contract for construction of courthouses, etc., subject to Acts 35th Leg. c. 141 (Vernon's Ann. Civ. St. Supp. 1918, arts. 2268a, 2268b), requiring them to invite competition if cost is $2,000 or more, in absence of constitutional or statutory prohibition, may make necessary changes in details by which price is increased or diminished.

**9. COUNTIES ⟐⟐50—CONTRACT—CONSTRUCTION OF COURTHOUSE—DELEGATION OF POWERS BY COMMISSIONERS' COURT.**

A contract by commissioners' court of a county for the construction of a courthouse in effect making the contractor its agent, with authority to parcel out the contract to subcontractors and thereby releasing him from all liability thereon, was void, because delegating the court's powers.

**10. COUNTIES ⟐⟐123—CONTRACTS—CONTRACTOR'S BOND—STATUTE.**

Vernon's Ann. Civ. St. Supp. 1918, art. 6394f, requiring one contracting with a county to execute a penal bond with security conditioned to pay for labor, material, etc., is mandatory, and the commissioners' court has no authority to release a contractor from the execution of such bond.

**11. COUNTIES ⟐⟐165—CONTRACT—BONDS OR WARRANTS.**

Evidence of indebtedness of a county to a contractor in form of negotiable bonds with interest coupons attached, for construction of a courthouse, but designated "County Courthouse Warrants," in view of minutes of commissioners' court disclosing its intention, were warrants and not bonds.

**12. EVIDENCE ⟐⟐65—PRESUMPTION OF PURCHASER'S KNOWLEDGE OF LAW.**

A purchaser of what purports to be county bonds is presumed to know the provisions of the law authorizing their issuance and is required to examine into the steps taken by the commissioners' court in that respect, whether referred to on face of the bonds or not.

**13. COUNTIES ⟐⟐123—CONTRACTS—BOND—STATUTE.**

Though Vernon's Ann. Civ. St. Supp. 1918, art. 6394f, requiring a contractor with a county to give a bond conditioned to pay for work, material, etc., before commencing work, is mandatory, there is no objection to deferring its execution to a time prior to beginning the work.

**14. COUNTIES ⟐⟐122(1)—CONTRACTS—SUBMISSION TO INSPECTOR OF PUBLIC BUILDINGS—STATUTE.**

Acts 34th Leg. c. 148 (Vernon's Ann. Civ. St. Supp. 1918, arts. 6394dd—6394dddd), requiring the inspector of masonry, public buildings, and works to inspect the plans, etc., of public buildings, does not require county officials to submit plans to inspector, though requiring them to forward his fees, but failure to conform thereto would not invalidate a contract in other respects valid.

Appeal from District Court, Freestone County; A. M. Blackmon, Judge.

Suit by E. Headlee and others against G. W. Fryer, County Judge, and others as members of the Commissioners' Court of Freestone County, and others. Interlocutory injunction granted pending further orders, motion to hold defendants in contempt of such order denied, and injunction dissolved; and plaintiffs appeal. Judgment dissolving the interlocutory injunction reversed, and cause remanded.

A. B. Geppert, of Teague, W. J. Bryant, of Wortham, and Richard Mays, of Corsicana, for appellants.

C. S. Bradley, of Groesbeck, and Callicutt & Johnson, of Corsicana, for appellees.

RASBURY, J. Appellants, citizens and taxpayers of Freestone county, commenced this suit in the court below against the county judge and the other members of the commissioners' court, the county tax assessor and collector, the treasurer, auditor, and W. A. Myrick and A. B. Ayres, for the purpose of declaring void and unenforceable and to enjoin pendente lite the execution of a contract entered into by the commissioners' court with W. A. Myrick and A. B. Ayres, by which Myrick, in consideration of $200,000, agreed to construct a courthouse for the county, and by which Ayres was to act as architect for the county in that connection; and to also hold as void and illegal the tax levied to meet the expense of said building. Upon presentation in chambers to Hon. A. M. Blackmon, the district judge, and by consent of all parties, interlocutory injunction was granted pending further orders of the court. Subsequently, on motion to dissolve, a further hearing in chambers was had, including a hearing upon a motion to hold appellees in contempt of the interlocutory order. At such hearing the motion to hold in con-

---

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tempt was denied, the interlocutory injunction dissolved, and costs awarded appellees. From the proceedings detailed, this appeal is taken.

The facts, in our opinion, which control the disposition of the case, are not in substantial controversy and, briefly stated, are these: There was more or less discussion among officials and some of the citizens of Freestone county concerning whether the existing courthouse should be repaired or an entirely new building erected. The matter crystallized when the commissioners' court requested the state inspector of masonry, public buildings, and works to examine and report the condition of the existing courthouse. On December 18, 1917, an assistant to the inspector, who had been detailed to make the examination, reported in substance that the building was unsafe, and that, while it was possible to repair same, it would be expensive to do so, would reduce the size and mar the appearance of the building, and for which reason he recommended the abandonment of the building and the erection of a new one. Subsequently some one, whom the evidence fails to disclose, but we assume some member of the commissioners' court, prepared a form of an order for entry upon the minutes of the court dated January 15, 1918, reciting the condemnation of the courthouse building by the state inspector, etc., and that a necessity existed for the "construction, repair and improvement" thereof, and that the cost of such "construction, repair, and improvement" would exceed $2,000, and directing the county auditor to give notice that the commissioners' court would receive competitive bids for the "construction, repair, and improvement" of the courthouse in the office of the county judge at Fairfield, the county seat, on February 4, 1918; such notice to be published for 14 days prior to the date set "for letting of the contract." The order so prepared was signed by the county judge and the four commissioners, but was not signed or adopted in open court according to the testimony of the only commissioner who testified. The order as written was not recorded in the minutes. One precisely similar, save in one respect, was recorded; the difference being that in the one recorded it was recited that bids would be received in the office of the county judge on February 14, 1918, whereas the form signed in advance of the entry recited that bids would be received February 4th. The notice published by the county auditor in the Fairfield Recorder, a newspaper published in Fairfield, the county seat, recited that the commissioners' court would receive competitive bids for the "construction, repair, and improvement" of the courthouse February 4, 1918, and was published 14 days prior to that date. On February 4, 1918, Ayres of San Antonio, Page of Austin, and Linebaugh of Dallas, all archi-tects, appeared before the commissioners' court with plans and drawings of proposed courthouses, and each was invited to and did submit what they had to the commissioners' court. Due to the fact that February 4th was not during regular term, the court, after inspecting the plans, invited the several parties to return on February 11, 1918, which would be the commencement of a regular term of the court, at which time it would be determined whether to repair or remodel the existing building or dismantle it and construct an entirely new building.

On February 13, 1918, and at a regular term of the commissioners' court, proposal to construct a new courthouse was submitted, whereupon Commissioners Terry and Roberts and County Judge Fryer voted for, and Commissioners Bryant and Lindley against, the proposal. The proposal having received a majority of the votes, it was ordered that the court "receive bids and enter into contract for the erection of a new courthouse." By the same vote, A. B. Ayres was selected as architect for the county over C. H. Linebaugh. On the same day bids in that respect were submitted by W. A. Myrick and W. L. Pearson & Co., the bid of the former being accepted, whereupon County Judge Fryer entered into formal contract, based upon a tentative synopsis of specifications and pencil sketches of floor plans and a drawing of the building, with W. A. Myrick, whose bid was also lowest, to construct a new courthouse for the contract price of $200,000, which was on the same day and at the same time ratified and approved by the commissioners' court, and also adopted and entered upon the minutes a resolution authorizing the members of the commissioners' court to visit such courthouses in the state as it deemed "helpful in deciding upon and adopting final plans and specifications," etc. Shortly after the action detailed, the members of the court departed and inspected courthouses at Kingsville, Brownsville, and San Antonio. Upon their return, and while in special session on April 18, 1918, the commissioners' court, with the consent of the contractor, ordered certain alterations changes, and modifications in the contract, plans, and specifications theretofore adopted, omitting work and material of considerable importance, which reduced the contract price $64,435. It was also provided by the final contract that other changes could be made in the plans by agreement of the parties, and if the changes caused additional cost and the parties disagreed in reference thereto, the architect should finally decide the issue. As changed, modified, and altered, and after adopting final and complete plans and detailed specifications, the contract was by the court "ratified, approved, and confirmed."

There are numerous points presented by appellants. We will not, however, consider

them separately and in the order presented, but confine ourselves to the issues deducible from the several points.

[1-3] Of importance in the case is the contention of appellants that the contract awarded to Myrick was not submitted to competitive bids in compliance with law. This contention is based upon a recent act of the Legislature regulating the manner of letting contracts by the commissioners' court. Gen. Laws, 35th Leg. c. 141, p. 349 (articles 2268a, 2268b, Vernon's Sayles' 1918 Supp. Civ. St.). Said act provides, in substance, that the commissioners' court shall not enter into any contract requiring the expenditure of $2,000 or more out of the funds of the county or any subdivision thereof without first submitting such contract to competitive bids, after publishing for two weeks in a newspaper published in said county the time and place when and where the contract will be let, or, if there be no newspaper published in the county, by posting notice thereof at the courthouse door of such county for 14 days prior to the time of letting such contract; and that a contract made without compliance with such provisions shall be void and unenforceable, performance of which or the payment of any money thereunder may be enjoined by any citizen of the county. There are other provisions of the act relating to the manner of letting the contract in case of public calamity or urgent necessity, etc., none of which are of importance under the facts disclosed by the record in the present case.

The first point made is that the act contemplates that, before the commissioners' court shall enter into any contract for or in excess of $2,000, it must definitely determine before inviting bids the character of the improvements contemplated, which in the present case would be to adopt plans and specifications of the proposed building. Appellees contend that since the act does not specifically prescribe what preliminary steps shall be taken before submitting the contract to competition, but leaves such matters for the judgment and discretion of the commissioners' court, what was done substantially attained the object sought. The act, it will be observed upon examination, is at most a bald requirement that no contract involving the expenditure of $2,000 or more shall be let save upon notice inviting competition. It means as much and certainly no less than that every contract, into which the county by its officers proposes to enter with another for whatever purpose, shall, if the amount be $2,000 or more, be submitted in the manner directed to competition. What steps county officials shall take in advance of the day set for submitting the contract the act does not undertake to specify. What is sought and required is obviously competition. It is left to the officials to present the matter in such

form as to secure the desired end. That it is their duty to do so will not be denied. That being true, it occurs to us that they are put to the necessity of being prepared to present to those who may appear to bid upon the contract some intelligent and concrete statement of the work required to be done or the structure to be erected as would tend to induce competition, depending in every instance upon the character of the undertaking. Otherwise, there would be no competition, and as a consequence the purpose of the Legislature defeated. For it can hardly be denied there could and would be no bids received, at least in good faith, in the absence of some specification of what the county required to be done or furnished by prospective bidders on a contract requiring the expenditure of such a large sum. That some such step on the part of the county officials was contemplated is a necessary deduction from the act requiring them to submit all such contracts to competition. Certainly responsible contractors are not going to undertake the financial liability involved in so important a matter as constructing a county courthouse without first being precisely informed what is required by the county particularly when it is commonly known that intelligent bids are out of the question in the absence of such information. The most ordinary prudence would require in such cases considerable particularity.

It is an old rule that statutes are to be construed with reference to the object intended to be attained, and that they should be given that construction which is best calculated to advance such object. The rule is statutory in our state. Article 5502, Vernon's Sayles' Civ. Stats. To be sure, if the meaning of the law is plain and unambiguous, there is nothing left for construction; and, while we have said that the present law is a bald statement that no contract shall be let without inviting competition thereon, it does not follow that the steps to be taken to secure competition before submitting the contract are equally as plain as that requirement, and to hold that steps which fail to secure competition are sufficient because the Legislature failed to prescribe precise steps to be taken would lead to absurdity. The rule is to extend the statute to cases not within the words, but within the purpose thereof. 36 Cyc. 1108. "A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter." State v. Delesdenier, 7 Tex. 76 (105). "While it is for the Legislature to make the law. it is the duty of the courts to 'try out the right intendment' of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the Legislature to express its

intent, and to follow which would pervert that intent." Russell v. Farquhar, 55 Tex. 355; McInery v. Galveston, 58 Tex. 334; Edwards v. Morton, 92 Tex. 152, 46 S. W. 792. Much more could be said upon the subject and many other authorities cited in support of the rules briefly stated, but what has been said is sufficient to support our conclusion that it was the duty of those charged with the enforcement of the law to take such steps as were reasonably and fairly calculated to attain the purpose intended by the act.

[4] The precise question, then, is: Did appellees, the county officials, prior to the day set for receiving bids and prior to letting the contract to Myrick, take such preliminary steps as would attain the object sought by the Legislature? In our opinion they did not. The facts in that respect are without controversy and are established in the main by orders spread upon the minutes of the commissioners' court, supplemented by the testimony of the county officials. These facts have been recited at another point in this opinion. They disclose that on February 4th, the day set for receiving bids (which appellants assert to be erroneous and which we will later discuss), the time was taken up in examining proposed plans of the architects for a new courthouse and for repairing the old one. No bids by contractors were presented that day, save one by Brielhart for repairing the old building. February 4th not falling within a regular term of the court, those present were invited to return at a subsequent day during regular term, at which time the officials would determine whether to repair the old building or construct a new one. Accordingly, on February 13th, during term time the court resumed consideration of the matter. First, they declared in favor of building a new courthouse and employed an architect in that connection. Next, the court adopted tentatively certain general specifications, floor plans, and exterior of building offered by Ayres, the architect whom they had employed. Based upon these general specifications and floor plans, they then entered into contract with Myrick for the construction of the building outlined subject to changes, modifications, and alterations on their return from inspecting other courthouses for which the court at the same time arranged. As we have shown, the inspection was made, and on April 18th, following, Ayres furnished complete and detailed plans and specifications which were adopted, and thereupon, after altering, modifying, and changing Myrick's contract to comport with the final plans and deducting $64,435 from the original contract price, it was ratified, approved, and confirmed. It thus appears without contradiction in the evidence that at no time was the contract submitted to competition. For if it may be said that the proposed plans suggest-

ed generally by Ayres, which were tentatively agreed upon on February 14th, were substantially the steps contemplated by the act cited and were sufficient to intelligently bid upon, yet bids thereon were not invited, for simultaneously with their adoption the contract was awarded to Myrick. If, upon the other hand, it is held that the county officials never reached a conclusion that would put them in position to invite competition until April 18th, and it occurs to us that that conclusion indubitably follows, the same result is reached, since it is also without dispute in the evidence that, when final plans and specifications were prepared by the architect employed by the county, the contract with Myrick was made to conform to the ultimate conclusions of the court and as so modified at once approved, ratified, and confirmed. This we think must in fairness be conceded without regard to the utility of the plans adopted or the economy of the price or the motives which controlled those upon whom the responsibility rested.

[5-7] The second point urged under the general proposition is, in substance: (1) That there was, in effect, no publication inviting competitive bids, and (2) if there was, that then the contract was let prior to the date set for receiving same, and as a consequence the contract with Myrick is void. The foregoing contention is based upon the conflict between the form prepared and adopted by the full court and the minutes as recorded, signed, and approved. As we have shown in our statement of the facts of the case, the form directed the auditor to give notice that bids would be received on February 4th, while the order actually entered upon the minutes directed the auditor to give notice that bids would be received on February 14th. The publication did not follow the minutes, but did follow the form. The contract according to the county's contention was let February 13th, or one day prior to the day designated by the minutes.

Appellees contend that obviously mistake was made in transcribing the order upon the minutes, and since it does not appear from the record that any injury resulted therefrom and that the architects appeared in conformity with the published date, the issue is immaterial. While the facts are as asserted, we are unable to agree, in the light of the provisions of the act, that only an immaterial issue is presented. On the contrary, we are forced to the conclusion that the contract is void because there was no notice given at all in a legal sense. The act requires the publication of notice of the intention to award the contract, either in a newspaper or by posting notices at the courthouse door. It does not, in precise terms, require that an order or resolution to that effect be adopted by the commissioners' court, and spread upon the minutes, but the com-

missioners can proceed in no other manner, since that court is required to record upon suitable books the proceedings of each term of court, which are in turn required to be read over and signed by the county judge or the member presiding and attested by the clerk. Article 2276, Vernon's Sayles' Stats. All authority exercised must be evidenced in that manner. The authority was so exercised and evidenced in the present case in reference to publishing the notice inviting bids. The reason for the requirement is obvious and need not be discussed. The day for receiving bids, according to the minutes, was fixed as February 14th, and we cannot assume that another date was intended, if to do so results in denying the verity of minutes, and according to authority presently referred to even mistake in the entry of the minutes could not be shown in a proceeding like the present one. Proof was offered and admitted to explain the conflict between the minutes and the public notice, which was objected to and which we think should have been excluded. S. L. Bryant, one of the commissioners, testified that he signed the order which the court intended should be entered upon the minutes in the courtroom in the presence of Mr. Terry, also a commissioner, before court was convened, but that he did not see any of the other commissioners sign same. While Bryant's evidence may suffice to indicate that the commissioners intended that the entry actually made on the minutes and approved by them should provide that bids would be received on February 4th, although we doubt the validity of the order for any purpose, since it appears not to have been adopted in open court, yet, as we have indicated, the verity of the acts and proceedings of the commissioners' court, as disclosed by its minutes, may not be challenged in such manner. "The commissioners' court is a court of record and speaks through its minutes and not by the mouths of the members of the body. The proper method to amend the minutes when they fail to speak the truth is by a motion made in that court, and not by allegation and proof in another tribunal in which a litigation concerning its orders may arise." Gano v. Palo Pinto County, 71 Tex. 99, 8 S. W. 634; Rankin v. Noel, 185 S. W. 883. While the attempt to attack the minutes of the court in the case cited was made by one suing the county the rule, it occurs to us, which forbids an outsider to thus attack the minutes, applies with like, if not greater, force to members of that court. It follows then that the commissioners' court having adjudged that it would receive bids on February 14th, and having failed to make publication of that fact, there was in the legal sense no publication at all, and, there being no publication at all, the fact that bidders did attend and no injury resulted is of no consequence, since by the act every contract let without publication is

void. Otherwise, the purpose of the Legislature could in every similar case be defeated by showing that no injury resulted. The lawmaking authority has decreed that the publication shall be made in any event, and while it may appear in this case that what was intended has been accomplished, we feel that that fact will not warrant us in sweeping aside the vital requirement of the law.

[8] The claim is made that the modifications, changes, and alterations in the contract made by the commissioners' court on April 18th constituted in law a novation, and as a consequence the substituted contract was void because entered into without giving the required notice. The modifications in the original contract were considerable and consisted in the main of omissions of items from the original plans, such as sinking a well, omitting furniture for the new courthouse, substituting plaster and wood trim for marble, cement for tile floors, pine for hardwood, omitting the plumbing, heating, electric wiring, sewage, and lighting plant, for which a deduction in price of $64,-435 was made. Also other changes mutually agreed to or when directed by the architect could be made by which the cost of the building could be increased or decreased. The commissioners' courts of this state have authority by contract or otherwise to construct courthouses, etc., save where limited by the taxing power in the amount expended, and it is their right and privilege to determine whether the structure shall be built, its cost, character, etc., subject now of course to the construction to be placed upon the act herein referred to with reference to inviting competition when the cost exceeds $2,000 or more. Stratton v. Commissioners, etc., 137 S. W. 1170; Commissioners v. Nichols, 142 S. W. 37. Such rule would seem, in the absence of constitutional or statutory prohibition, to carry with it authority on the part of the commissioners to make necessary changes in details by which the price was increased or diminished accordingly; but that authority may not be exercised by architects, agents, engineers, etc., since that would be a delegation of the authority conferred upon the commissioners. 15 C. J. 555. The authority cited, however, goes a step further and declares the general rule to be that the commissioners can in no event "make important general changes in the plan of the building." That rule, however, does not comport with our statute which confers the general authority "to provide and keep in repair court houses, jails and all necessary public buildings." Article 2241, subd. 7, Vernon's Sayles' Civil Stats. We therefore conclude that the commissioners' court was authorized to make the changes they did make in the contract, but that they were without authority to confer upon the architect power to make changes or increase the cost or to make his decision in any such matters controlling.

[9, 10] The contention is made by appellants, in substance, that by the contract with Myrick the county in effect made him its agent with authority to parcel out the contract to subcontractors and thereby relieve him of all liability thereon, and is hence void because a delegation of the powers of the county officials. The contention is based upon clause 5 of the contract, which provides in substance that before beginning work Myrick shall execute bond, the condition of which is not specified, but that he may, with consent of the commissioners, sublet "all or any part" of the work or furnishings specified to subcontractors, who shall enter into bond fixed by the commissioners and payable to Freestone county, such bonds to be "taken and accepted in lieu of bond of W. A. Myrick, who shall not be required to make bond." While the provision stated does not confer upon Myrick unrestricted authority to sublet the work at his will, since he may do so only with the consent of the commissioners, yet it can hardly be denied that it was contemplated by the county that he might sublet the entire contract, since to sublet all or any part of the contract means no less than that. Such purpose is emphasized by the further provision that, if he does sublet all or part of the work, he is released from giving the bond required by law, which is but to say that he is not bound on the contract, but the subcontractors are, and which warrants the further deduction that a contract binding upon Myrick was not contemplated nor shown by the provisions of the one he signed, and at least that he is as much the agent of the county as its contractor. In any event, whatever may be the legal result of such provisions, it may not be denied that the commissioners were without authority to release Myrick from execution of bond. Every person, firm, or corporation contracting with any governmental subdivision of the state for the construction of any public building or work shall, before commencing such work, execute the usual penal bond with good security, with the additional obligation that such contractor shall promptly pay all persons supplying labor and material for the work, together with other provisions unimportant to the issue under discussion. Article 6394f of Vernon's Sayles' Civ. Stats. The purpose of the requirement we need not discuss, though obviously a commendable measure as relates to the public interests and one of just protection to those who furnish labor and material on such buildings. It is mandatory and, as we construe the statute, must be complied with. That the contract contemplates that the contractor may be released from giving the bond is not to be denied. That he may not be able to sublet all or part of the contract, and hence will have to give the bond, is no more to be presupposed than that he will.

[11, 12] It is claimed that the evidence of the indebtedness of the county to Myrick and the interest coupons attached thereto for the agreed price to be paid for the courthouse, while designated warrants, in form and on their face purport to be and are negotiable bonds, and hence void for various reasons. The reasons are sound if the evidence of indebtedness be bonds. While the instruments in many respects take the form of and are couched in the language of bonds or negotiable obligations, they are designated and purport to be "Freestone County Courthouse Warrants." The minutes of the commissioners' court disclose that that court created a special courthouse warrant fund, designated "Class 1," out of the 25 cents constitutional public improvement fund of the county, to be used in payment of the principal and interest of the warrants, and for the purpose of raising money with which to pay the interest on the warrants and create a sinking fund to retire the debt, a tax of 22 cents on each $100 of valuation of taxable property in the county was levied for the current year, and so much for each succeeding year as was necessary while said warrants were outstanding, to be annually assessed, collected, and applied for said purpose. It thus seems clear that the intention and purpose of the commissioners was to issue warrants, and that the form of the warrants could not mislead any one into the purchase of same as bonds or involve the county in any greater liability than that attached to warrants, since the rule seems to be that a purchaser of what purports to be county bonds is presumed to know the provisions of the law authorizing their issuance and required to examine into the steps taken by the commissioners' court in that respect whether referred to on the face of the bonds or not. Ball, Hutchings & Co. v. Presidio County, 88 Tex. 60, 29 S. W. 1042; Mitchell County v. Bank, 91 Tex. 361, 43 S. W. 880. By the authority cited, purchasers of the bonds are required to inspect the order of the commissioners' court authorizing the issuance of the indebtedness. That order will disclose the debt to be warrants and destroy any defenses of a purchaser who assumed them to be bonds. Being warrants, the commissioners took the steps necessary in that respect by levying the tax within the constitutional limit, with which to pay the interest and create a fund for their retirement.

As shown in our statement of the facts on the question of whether the courthouse should be constructed, two of the commissioners voted aye and two no. County Judge Fryer decided the question by voting aye also. The contention is made that his interest in building the new structure was such as to legally disqualify him in that respect. We have carefully read and considered all the evidence in the record bearing on that issue,

and find nothing therein as basis for the claim that the county judge had any interest in the matter other than that which was for the best interests of those whom he officially represented.

[13] Complaint is made that Myrick did not execute the bond required by statute. The contract required Myrick to execute the bond before entering upon the performance of his contract, and while we think it is mandatory that bond shall be given in all such cases, as indicated at another place in this opinion, we can see no objection to deferring its execution to a time prior to beginning the work.

[14] Complaint is also made that the plans for the courthouse were not submitted to the inspector of masonry, public buildings and works, and that the commissioners failed to set aside 1 per cent. of the contract price of the building for the purpose of maintaining the office of that official. 34 Leg. Reg. Sess. p. 254 (Vernon's Ann. Civ. St. Supp. 1918, arts. 6394dd–6394dddd). The act requires the inspector to inspect the plans, etc., of public buildings. It does not require the county officials to submit plans to him, though such would be proper. The act does require the officials to set aside and forward the fees charged. That the failure to observe these matters would invalidate a contract in all other respects valid, we are not prepared to hold. While they are of importance and should be complied with, they involve purely official duties and cannot, we believe, serve as a basis for holding the contract void.

For the several reasons discussed in this opinion, the judgment of the honorable trial court dissolving the interlocutory injunction is reversed, and the cause remanded for further proceedings not inconsistent with the views expressed herein.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

