## HARALSON v. CITY OF DALLAS et al. (No. 10491.)

Court of Civil Appeals of Texas. Dallas. Feb. 9, 1929.

Rehearing Denied March 16, 1929.

Allen & Allen, of Dallas, for appellant.

J. J. Collins, City Atty., A. A. Long, W. Hughes Knight, and H. P. Kucera, Asst. City Attys., and Cockrell, McBride, O'Donnell & Hamilton, all of Dallas, for appellees.

LOONEY, J. L. G. Haralson, a citizen taxpayer, brought this suit for himself and others similarly situated to enjoin the city of Dallas, its board of commissioners and auditor, and the United States Cast Iron Pipe & Foundry Company, the successful bidder for the construction of certain water supply mains for the city, from consummating a contract for said improvements. At the conclusion of an exhaustive hearing, at which all material facts involved in the transactions were developed, the court denied plaintiff the temporary relief sought, from which he has appealed.

The propositions urged for reversal, and our conclusions, both of law and fact, will be stated during the progress of the discussion.

Appellant's first contention is that the advertisement by the city, soliciting bids for the public improvement, was insufficient, in that bids were invited upon propositions not specified in or contemplated by the specifications, was inconsistent with the notice to bidders contained in the specifications, and violative of the charter of the city.

The board of commissioners of the city of Dallas adopted plans and specifications that contemplated the laying of supply mains in connection with its Bachman station. These specifications are voluminous, stating in detail the nature of the project, the size, character, and quality of pipes and material to be used, the location of the lines, the amount of excavation necessary, the highways, streets and railroads to be crossed, etc., and were sufficiently full, comprehensive, and clear to admit of intelligent bidding for contracts to furnish the material only, or to do the work only, or to furnish both material and labor for a complete or "turnkey" job.

The provision of the specifications with which it is claimed the advertisement conflicts, reads:

"XII. *Division of Contracts may be Made.* Contract, or contracts, may be awarded for the work at the discretion of the Mayor and Board of Commissioners of the City of Dallas, Texas, either for the whole work or for any part thereof. Should such a division of contracts be made, however, it shall be either by lines as described, or by sizes of pipe specified for lines or parts of lines."

The advertisement was published in the official paper of the city of Dallas, and in a number of engineer's and contractor's journals throughout the United States. Its alleged conflicting provisions are these: That is, it invited sealed bids separately, for furnishing material to be used in constructing the lines,

for doing the work of installation, and for furnishing all material and constructing the lines complete. The advertisement also contained this paragraph: "This material and laying of lines shall be done in accordance with plans and specifications on file with J. R. John, Engineer of the Water Department, copy of which may be obtained on deposit of a cashier's check of $25.00, this check to be returned on return of plans and specifications."

The contention of appellant is that the specifications contemplated the letting of a contract for a complete job only, that the city was not unauthorized to invite bids for furnishing material only, or for doing the work only; therefore, in view of the competitive bidding provision of the city charter, a bid filed in response to such an advertisement could not form the basis of a contract. The provision of the city charter invoked, in fact, all the law on the subject, is section 42 of article 14, as follows: "All contracts of whatsoever character pertaining to public improvements or the maintenance of public property of said city, involving the outlay of as much as $500.00, shall be based upon the specifications to be prepared and submitted and approved by the Board of Commissioners; and after approval by the Board of Commissioners, advertisements for the proposed work, or matters embraced in said proposed contract, shall be made inviting competitive bids for the work proposed to be done * * * ."

Thus it appears that the charter makes no requirement as to the form or contents of the advertisement, but simply prescribes that bids shall be advertised for the proposed work, or for the matters embraced in the proposed contract.

■ The matter of deciding upon a proper advertisement for bids was a question for the governing board of the city. As the plans and specifications were sufficiently comprehensive and clear to admit of split or combination bids, as well as bids for a complete or turnkey job, we can imagine no reason why all these should not have been invited; in fact, we are of opinion that the city authorities, in calling for bids on these alternatives, not only acted properly within the scope of their discretion, but exercised good judgment as well. Appellant does not contend that the advertisement was not full, clear, and understandable, the contention being that it was not in the form set forth in the specifications. We find no necessary conflict between the form of advertisement set forth in the specifications and the advertisement actually published; but if this be conceded, still the governing board of the city had the right, if they saw fit, to adopt another and different form, provided, of course, the advertisement was sufficient to advise bidders in regard to the proposed work. It is not shown that any bidder was confused, that any one failed to

bid, or that any one suffered injury because split or combination bids were invited. On the contrary, the advertisement produced a very liberal response, as 2 bids were filed to furnish material only, 6 were for the work only, and 15 proposed to furnish material and labor and complete a turnkey job. In situations such as this, where every bidder has an equal opportunity to bid on the same alternatives, an invitation for split or combination bids, instead of being condemned, is, rather, commended. See Schwitzer v. Board of Education, 79 N. J. Law, 342, 75 A. 447, Wallace v. City of Louisa, 217 Ky. 419, 273 S. W. 720.

■ An advertisement that advises bidders, in a general way, in regard to the contemplated improvement, and refers to specifications, available to all, as was done in this instance, is sufficient. See 30 L. R. A. (N. S.) 220, and authorities cited, especially Arnold v. Ft. Dodge, 111 Iowa, 152, 82 N. W. 495; Jenny v. City of Des Moines, 103 Iowa, 347, 72 N. W. 550; Fullerton v. City of Des Moines, 147 Iowa, 254, 126 N. W. 159; Bozarth v. McGillicuddy, 19 Ind. App. 26, 47 N. E. 397, 48 N. E. 1042; Dixon v. Greene County, 76 Miss. 794, 25 So. 665.

If appellant's construction of the specifications should be accepted, that is, that a letting for the entire or complete job only was permissible, still it is not conceived that any harm or confusion resulted to any one by also advertising for split or combination bids, as the bid actually accepted was for the entire work, and the contract sought to be enjoined is precisely of the nature that appellant says was the only kind justified by the specifications.

■ Appellant makes the further contention that the requirement in the specifications for a chemical analysis of cast iron from which pipes are to be manufactured, that is, to conform to a prescribed maximum and minimum content of sulphur, phosphorus, manganese and silicon, restricted competition, violated the competitive provision of the city charter, and was against public policy, for the reason that the United States Cast Iron Pipe & Foundry Company, the successful bidder, enjoyed such favorable freight rates that no other manufacturer could compete with it for the work. Appellant does not contend that the test was placed in the specifications for the purpose of restricting competition or for any fraudulent purpose, the contention being that, although the test was prescribed in good faith, its effect was to restrict competition. This argument is based upon the assumption (which is not borne out by the facts) that the successful bidder was the only manufacturer in the United States that could compete for a contract to furnish the pipe required.

The trial court found, with ample evidence to sustain the finding that the chemical analysis test did not stifle competition, that the

successful bidder was not the only manufacturer in the United States that was able and willing to perform the work and furnish pipe in accordance with the specifications, and this is conclusively established by the fact that there were six bids for the entire job that contemplated the use of cast-iron pipe fulfilling the chemical analysis test. The object of the authorities in prescribing this test was to secure a high grade of cast iron, absolutely necessary, in view of the purpose and use to be served. It was imperative that iron pipe of minimum brittleness be used to guard against sudden breaks and resultant breakdowns of water supply, and the requirement was made only after a thorough investigation of the subject by the city engineer. He consulted scientific works, engineers, and waterworks men, north and east, including army engineers, the Bureau of Water Supply for Washington, D. C., and engineers of other cities, notably, of Providence, Rhode Island, New York, Boston, Baltimore, and Milwaukee, these cities having prescribed the same chemical test for cast-iron pipes for their water supply.

The city authorities were, under the law, charged with the duty of securing the kind and character of pipes and material best suited for this project, and, having acted in good faith, it is not for this court, or any other court, to substitute its opinion for theirs in determining such a matter.

Another contention of appellant is that the bid of United States Cast Iron Pipe & Foundry Company was vitiated, by an accompanying letter, to the effect that its proposal was conditioned on being awarded the entire job. The point made is that the letter made new stipulations not in harmony with the specifications that, in effect, took the bid without its terms.

As heretofore shown, the specifications provided that, at the discretion of the governing authorities of the city, contracts could be let, either for the whole work or for any part thereof by lines as described, or by sizes of pipe specified for lines or parts of lines. The bidder in question submitted a bid complete within itself, upon the form and in the manner provided in the specifications, which included separate proposals for material and for installation. The bid was accompanied by the letter referred to, stating in effect that the proposal was for the entire job, or none at all.

The governing authorities of the city, after canvassing the bids, decided that the one in question was the best and most advantageous, and accordingly awarded the contract for a complete or turnkey job. All contractors were invited to bid alike for a part or for the entire work, according to lines and sizes of pipe. There is no evidence of a lower bid, nor that any other bidder knew of or was controlled in any sense by the bid in question; hence it did not suppress competition, nor tend in the least to prevent any or as many as desired from bidding on a part or the whole job.

The authorities having reserved the right to award contracts, either for the whole or part of the work, were, in our opinion, fully authorized to accept the bid in question. A case in point is Beshear v. City of Dawson Springs, 214 Ky. 102, 282 S. W. 764; also see Williams v. Hybskmann (Mo. App.) 247 S. W. 203.

We therefore overrule all assignments and propositions urged for reversal, and affirm the judgment of the court below.

Affirmed.