## ANDERSON et al. v. PARSLEY et al.
### No. 12551.

Court of Civil Appeals of Texas. Fort Worth. Feb. 14, 1931.

Rehearing Denied March 14, 1931.

missioners' court, James T Taylor, the successful bidding contractor for a courthouse to be ˙erected at Graham, ˙Young county, E. G. Withers, and J. ˙C. Thompson, the architects employed.

From the statement of facts, it appears that in September, 1930, there was discussed before the commissioners' court of Young county the matter of building a new courthouse, but, by a vote of the commissioners' court, the question was decided adversely to said building; later, one of the commissioners having changed his mind about the matter, on the 10th day of November there was entered an order to build a new courthouse Notices were sent to certain architects that the court would consider the matter of employing architects who, after employment, would prepare plans and specifications. Anton Korn, of Dallas, and Voelcker & Dixon, of Wichita Falls, appeared without any complete plans drawn. Withers & Thompson appeared with˙ complete plans and specifications. After the commissioners had heard each of the visiting architects, they passed an order selecting Withers & Thompson as architects to draw plans and specifications and supervise the building of the courthouse at an agreed compensation of three per cent. for the drawing of plans and specifications, and a, further compensation of 2 per cent. for superintending the building. Notice was published on November 12, 1930, and for three weeks thereafter, that bids would be accepted on said mentioned date· for the building of the courthouse in keeping with plans and specifications prepared by Withers & Thompson, a copy of the plans to be found in the possession of the architects and in the office of the county auditor.

E. G. Withers testified that for two years he had been talking to the commissioners' court with reference to furnishing plans and specifications for a new courthouse; that on November 10, 1930, he went to Graham and submitted plans; that he did not know anything about a ·previous decision not to build a courthouse after the meeting in September, 1930·; that he had a tentative agreement with Mr. Belcher, the county auditor, to remodel the courthouse; that on November 10th he came to Graham, and that Mr. Voelcker and Mr. Korn· were present; that, after discussing the plans at length with the commissioners' court, he was informed that his firm had been selected as the architects, and an order was written to that effect; that later ˙ there were some minor changes made in the building plans, and that these changes were indicated upon the blueprints by red lines; that he returned to Graham on November 14th, the following Friday, and that the commissioners' ·court went over the new plans, found them to be correct and in accord with their desires and wishes; that at

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellants.

Kilgore & Rogers, of Wichita Falls, Chauncey Penix, of Graham, W. P. Dumas, of Dallas, and Bryan, Stone, Wade & Agerton, of Fort Worth, for appellees. .

BUCK, J.

This case originated in the district court of Young county, and was a suit brought by O. T. Anderson and W. G. Bullock, alleged to be taxpayers and citizens of Young county, against W. F. Parsley, county judge, C. W. Akers, A. C. Anderson, Tom Rice, Sam Bird, and G. Earl Hutchings, members of the com-

this time W. F. Parsley was county judge, and H. L. Leberman, A. C. Anderson, C. W. Akers, and M. H. Sims were commissioners; that they were present at the time the plans were adopted and the order made for the employment of Withers & Thompson as architects; that H. L. Leberman voted "nay" on the question as to whether or not a courthouse should be constructed; the other commissioners voting in the affirmative.

A temporary restraining order was prayed for in the suit filed to restrain the commissioners' court and their successors from undertaking to perform either of said contracts, that is, the contract with Withers & Thompson as architects, and the building contract with James T. Taylor, and keep them from issuing and delivering the specifications of Withers & Thompson, or from undertaking to enforce the tax levies purporting to be made in said orders on December 8th and 20th. On January 5, 1931, the application for injunction was heard by the district judge in chambers, and the temporary injunction was denied, from which order and judgment the plaintiffs have appealed to this court.

## Opinion.

The contentions of appellants are stated in their brief, and are substantially as follows:

"(a) The evidence overwhelmingly establishes (or to say the least of it, raises a strong issue of fact) that Taylor Bros. Company of Wichita Falls, were denied the right to bid by being refused plans and specifications and by being dissuaded by the architects, and that such actual stifling of competition renders any contract void.

"(b) That the communications sent out by the architects as to what the county was expecting to pay and undertaking to frighten bidders, was sufficient to justify a jury in finding that there had been an actual stifling of bids so as to render the contract void if it does not conclusively establish it.

"(c) That the law requiring the contract to be let to competitive bids, necessarily requires that the plans which are to form the basis of competition, must be adopted when the proposition is submitted—the law requiring it to be submitted for a given length of time—and there is an issue of fact here as to whether the plans were so adopted or were at any time completed prior to November 26, 1930."

The contentions as to the invalidity of the contract as a matter of law may be summarized as follows:

(a) The statute, article 2368, requiring that contracts of this nature be submitted to competitive bids, and that the bidder be required to furnish a surety bond for the full contract price, and that, after the bids are received, the county shall then consider the matter of letting the same, and shall let the same to

the lowest responsible bidder, contemplates that the bids shall be open to all the public; and the specifications here having limited those who might bid on a very substantial part of the work to manufacturers who had been in business for five years so limit competition as to render the whole proceeding void under the express provisions of article 2368 that such contracts shall be void and enjoined at the instance of any taxpayer.

(b) No restriction could be placed upon bids which tend to increase the price to the county, and, the specifications having placed a restriction in that it required the contractors to furnish a list of subcontractors two days prior to bidding, and the undisputed evidence showing that this will cost the county money, same is an unreasonable requirement rendering the contract void; and same is not avoided by showing that the particular bidders were favored by not being required to furnish this information, for changes favorable in their nature may not be made immediately upon the time of bidding.

(c) Certain unreasonable requirements were contained in the specifications with respect to insurance which of necessity increased the contract price at the expense of the county and rendered the contract void.

(d) As to certain items of the work, no competition is asked for, but lump sums were to be paid.

(e) The proposition made was that the county would issue warrants bearing 6 per cent. interest, but the maturity date of the warrants was not shown, and such maturity date is a material factor for prior determination in order that the bids may be competitive—that is, upon the same terms.

(f) That the actual contract entered into is void, because it provides for warrants to bear interest at the rate of 6 per cent. per annum, payable semiannually, whereas the proposition was they should bear 6 per cent. interest per annum, and the contract may not be upon more favorable terms than those provided for, for all bidders are entitled to the right to scale their bids in view of more favorable terms.

(g) That there has been no sufficient tax levy to support the issuance of the warrants, in this:

(1) The order of December 8th is not sufficient as a tax levy because the court did not then have before it all those facts necessary for them to have as a basis for the exercise of their discretion in fixing the tax rate.

(2) The purported levy is not of any given amount, and does not dispose of those discretionary matters, which renders the whole a matter of mathematical or clerical calculation.

(3) The Constitution provides that, when a contract is made, provision must be made at the time for tax levy, and contemplates of

necessity that, when the levy is made, the court making the levy must have knowledge of all those facts essential to the exercise of their discretion in fixing the rate, the length of time the tax levy shall be made, etc., none of which the court had on December 8th.

(4) The order of December 8th still leaves for determination certain discretionary matters to render same effective as a tax levy, and these discretionary matters must be determined at a regular term with all members present.

(h) The order of December 20th is wholly insufficient, in that:

(1) It does not purport to be a tax levy.

(2) It cannot be treated as a tax levy because not made at a regular term and with all commissioners present.

(3) It, together with the order of December 8th, cannot be treated as a tax levy because, if the order of December 20th is necessary to render effective the order of December 8th, same was not made at a regular term with all members present.

(i) The statute requiring the giving of a bond is mandatory, and the bond is insufficient in this instance:

(1) Because the statute providing for a bond impliedly requires one to be consistent with the general laws of Texas, permitting a suit upon a bond may be filed within the general limitations statutes of Texas, whereas the bond here limits suits to one year.

(2) The limitations of the right to sue on a bond within one year conflicts with the contract obligations which are performable after one year in some particulars.

(j) Tom Rice and Sam Bird were elected commissioners of Precinct Nos. 3 and 4, respectively. They sought to qualify December 1st. They actually presented bonds and took the oath. They were not recognized. Appellants contend they were entitled to qualify, and that M. H. Sims and H. L. Leberman were no longer commissioners and acts of the court in consequence invalid. Appellants' contentions on this ground are:

(1) Article 17, R. S. 1925, does not undertake to fix terms.

(2) If so, is unconstitutional.

(k) Because, when made, no tax levy was made to support it, and it was contemplated as a charge on future years.

The evidence as to whether or not Taylor Bros. Company of Wichita Falls was denied the right to bid by being refused plans and specifications and by being dissuaded by the architects does not bear out the contention of appellants. E. G. Withers testified that R. L. Taylor came to his office some time about December 5th; that he and Mr. Thompson talked to him, and that he told Mr. Thompson that he knew the Taylor Bros., and thought that they were absolutely responsible, and would be glad to have them figure on the work; that he explained to Mr. Taylor that some architects of Wichita Falls had threatened the commissioners' court with trouble about the matter, and a Wichita Falls firm of lawyers had been employed by the opposition to the movement in Wichita Falls to cause the commissioners' court of Young county as much trouble and embarrassment as possible, and, if they were going to use the plans for that purpose, and not use them to put in a bona fide bid on the work, they would rather they would not get the plans, but, if they wanted them for the purpose of figuring on the work, that they (Withers & Thompson) would supply them with the plans; that Mr. Taylor said he would go back to Wichita Falls and talk with the Taylor Bros. and see if they had time to figure on the contract; that he believed the time was too short for them to figure on the job then; that he would talk to the other members of his firm, including his father, and would let Withers & Thompson know his decision in the matter.

Mr. Withers further testified that, at the time Mr. Taylor talked to him in his office, they had 20 sets of plans and specifications, possibly 21 or 22, and they had a complete set in their office from which they could make more; that this plan was available for the inspection of Mr. Taylor at any time; that he could furnish him with the plans within two hours, and within two days furnish him the specifications; that later Mr. Taylor wrote him that Taylor Bros. Company would not make a bid; that, had Taylor Bros. gotten the plans and specifications at the time they were offered to Mr. Taylor, they could have prepared and submitted a bid by December 12th, the day the bids were to be submitted.

The evidence further shows that Graham is only 70 miles from Wichita Falls, and, if an application had been made to the commissioners' court for a copy of the plans and specifications, together with a contract, that such plans and specifications would have been furnished the prospective bidder. It is some 125 miles from Wichita Falls to Fort Worth.

In Williams v. Castleman, 112 Tex. 193, 247 S. W. 263, 268, on certified questions from this court, the Supreme Court of Texas, speaking through Chief Justice Cureton, said:

"Under this provision and the statutes generally regulating commissioners' courts, these courts, when acting within the sphere of their powers, must be regarded as courts of general jurisdiction. * * * No principle of law is better settled than that acts of discretion and findings of fact on the part of public officers to which such power is confided, including commissioners' courts, will not be reviewed on appeal," citing cases.

■ All presumptions of law are in favor of the validity of the acts of the commissioners' court. Hannon v. Henson, 15 S.W.(2d) 579, 584, by the Commission of Appeals, says:

"All presumptions must be indulged in favor of the authority of the court to act at the time it did act, under the facts presented and under the circumstances shown"— citing cases.

Therefore, even though the commissioners' court might be bound by any words or conduct of the architects, such words or conduct ought to be given a most reasonable construction, and we do not think that the contention that Taylor Bros. Company was prevented from submitting their bid is supported by the evidence, and, further, that the fact that the architects stated that there was some oposition in Young county to the building of the court house, that such statement did not unduly stifle competition. The evidence shows that there was some oposition, either on the part of these complainants or others, and two suits have been filed to enjoin the compliance with these contracts by the commissioners' court.

In Mechem on Agency, vol. 1, § 992, it is said:

"An architect, engineer, or other superintendent employed to supervise the construction of a building, railroad, or other similar structure, is usually an agent with limited authority. His authority, of course, may be given a wider range, but, in the absence of such an enlargement, his authority and duty are confined to seeing that the work is done in accordance with the plans and specifications agreed upon. He has, therefore, no implied authority to alter the terms of the contract, or to waive compliance with its provisions. He has no implied authority to order extra work or materials, extend the time of performance, make any change in the plans and specifications, or accept different or inferior materials and bind his principal to pay for them. Where the contract provides that payment shall be made upon his certificate of compliance, this goes no further than to authorize him to pass upon the manner of performance; it gives him no general authority to waive compliance with any of the substantial conditions of the contract, such for example, as that the payments shall not be due until the work has been done to the architect's satisfaction."

■ We are further of the opinion that the complaint made in section (b), above quoted, is without merit. We think there is sufficient evidence to justify the court in holding that there was no stifling of bids, such as to render the contract void.

Article 2368, Rev. Civ. Statutes of 1925, is as follows:

"No commissioners court shall make a contract calling for or requiring the expenditure or payment of two thousand dollars or more out of any fund or funds of any county or subdivision of any county, without first submitting such proposed contract to competitive bids. Notice of the time and place when and where such contract will be let shall be published in such county or subdivision once a week for four weeks prior to the time set for letting such contract, and a certified check for five per cent of the amount of the bid shall be required to be filed with each bid, and said contract shall be let to the lowest and best responsible bidder upon said contract and said bidder shall be required to give a good and sufficient bond in the full amount of the contract price executed by some surety company authorized to do business in this State. If there is no newspaper published in such county or subdivision, then notice of the letting of such contract shall be given by causing notice thereof to be posted at the courthouse door of such county for four weeks prior to the time of letting such contract. Provided, that in case of public calamity, where it becomes necessary to act at once to appropriate money to relieve the necessities of citizens or to preserve the property of the county or subdivision, this provision may be waived. All contracts made by or with said court calling for or requiring the expenditure of any amount of money less than two thousand dollars and exceeding five hundred dollars shall be let by competitive bids at a regular term of court, except in case of urgent necessity or public calamity. The provisions of this article shall not apply to any work done under the direct supervision of the county commissioners and paid for by the day. A contract made by the commissioners court without complying with the terms of this article shall be void, and shall not be enforceable in any court of this State, and the performance of same and the payment of any money thereunder may be enjoined by any citizen of the county or subdivision. This law shall be cumulative of this title."

The evidence shows that on November 10, 1930, the commissioners' court in regular session passed an order authorizing the building of a new courthouse; that there was only one vote against the proposition, that of H. L. Leberman; that on the same day a contract of employment was entered into between the commissioners' court, with Withers & Thompson as architects, and appropriate orders entered to this end; that subsequently, on December 8, 1930, the commissioners' court levied a tax of 25 cents on the $100 valuation of taxable property to take care of the warrants to be issued, interest, and 10 per cent. attorneys' fees in event of a default. There is no contention that the tax levied was beyond the power of the court. Under article 2352, the commissioners' court has the power to levy a tax not to exceed 25 cents on the

$100 "for the erection of public buildings, streets, sewers, water works and other permanent improvements." At the time the tax was levied, no contract had been entered into with the contractor, and we think that this act was in compliance with the requirement that at the time a debt is created a tax should be levied for the payment thereof.

■■ Article 11 of the Constitution, sections 2, 6, and 7 thereof, provides for the construction of jails, courthouses and bridges, etc., and the levy of taxes to pay the interest thereof, and to levy "at least 2% as a sinking fund." It is well settled that public officers are presumed to have done their duty, as it is equally well settled that the Constitution and laws of the state form a part of any contract or tax levy made by the commissioners' court. The Texas decisions were reviewed by the Supreme Court of the United States in Wade v. Travis County, 174 U. S. 499, 19 S. Ct. 715, 717, 43 L. Ed. 1060, wherein the case of Mitchell County v. City National Bank, 91 Tex. 361, 43 S. W. 880, 888, was reviewed with approval and the decision of the Supreme Court of the United States declared to rest thereon. The court in part said:

"The power to do so [that is to levy a tax sufficient to take care of the interest and sinking fund] could be derived from the legislature only. We understand that the provision required by the constitution means such fixed and definite arrangements for the levying and collecting of such tax as will become a legal right in favor of the bondholders of the bonds issued thereon, or in favor of any person to whom such debt might be payable. It is not sufficient that the municipal authorities should by the law be authorized to levy and collect a tax sufficient to produce a sinking fund greater than two per cent., but to comply with the constitution the law must itself provide for a sinking fund not less than two per cent., or require of the municipal authorities to levy and collect a tax sufficient to produce the minimum prescribed by the constitution."

■ The power of the county commissioners under the Constitution, art. 8, § 9, as amended December 19, 1890, to levy a tax of 25 cents on $100 valuation to construct buildings, sewers, and other permanent buildings, being limited to that levy for all such purposes, a levy can be made for a courthouse and jail only so far as the limit has not already been reached for the other purposes. Stratton v. Commissioners' Court of Kinney County (Tex. Civ. App.) 137 S. W. 1170.

■ There is no evidence that any part of the taxes for permanent buildings or for other purposes mentioned in the statutes had been theretofore levied, and consequently the commissioners' court had the power to make the levy of 25 cents on the $100 valuation. The complaint that Taylor Bros. was prevented from bidding by the suggestion made by Withers & Thompson in a letter to Mr. Chewning, an estimator for Taylor Bros., that a bond in the sum of approximately $15,000 should be filed with their bid, we do not think is sustained by the evidence. Mr. Chewning testified that on November 17th he talked to the architects with reference to obtaining plans and specifications, and was not refused; that he did nothing further until November 22d, when he wrote a letter requesting plans and specifications; that he knew there was a set of plans and specifications on file at the courthouse in Graham that could be seen by any one; that he did not communicate with any member of the commissioners' court and ask that the architect be required to furnish plans and specifications; that he would have bid on the job as a contractor even though it required equipping the structure with complete furniture and its installation; that the furniture phase of the specifications would not have deterred him in bidding on the work; that he would have gone ahead and bid, regardless of the provisions in the specifications with respect to furnishing the furniture for the courthouse; that any contractor would have done so; that a price could have been obtained on furniture; that there are people in Texas who furnish such furniture as judges' benches, tables, chairs, desks, etc.; there are some planing mills that will manufacture these articles for contractors. He further testified by affidavit that on November 22d he requested by letter the plans and specifications; that he received the architect's letter of November 26th, wherein he was advised that the building would be paid for in warrants; that a $50 deposit would be required for plans; and that the architects would furnish plans and specifications if Taylor Bros. desired to bid.

Appellant's witness Taylor, of the firm of Taylor Bros. Company, testified that he went to Fort Worth December 5th to see about obtaining plans and specifications; that he had about an hour's conversation in the office of Withers & Thompson; that the architects told him that there were some dissatisfied architects in Wichita Falls who were interested in defeating the construction of the new courthouse at Graham; that, if he wanted the plans for the purpose of bringing them back to Wichita Falls for the information of these architects and attorneys, he could not have the plans, but, if he was interested in submitting a bona fide bid on the job, he could have the plans; that Mr. Withers told him that his firm knew the father of the witness personally, and would be glad to have him bid on the job; that he could get plans within an hour and specifications within two or three days; that had he taken a set of plans, he could have spent

two or three days taking off the quantities of the plans without having the specifications before him; that it would probably take longer than two or three days to go over thirty pages of the plans and take off the quantities; that he knew subcontractors had theretofore obtained plans and were figuring on the job; that sometimes general contractors wait until the day of the opening of bids before they submit their bid or receive all of the subcontractors' bids, to obtain the benefit of last day bidding; that his firm had placed about four competitive bids in the last six months, and had been awarded one; that his firm had bid on several courthouse jobs, but had never built a courthouse; that Mr. Withers said he would be glad to have Taylor Bros. bid on the job if we wanted to, and that he would furnish them with a copy of the plans and specifications if they wanted to submit a bid; that at that time he decided Taylor Bros. would not submit a bid.

Miss Roberts, in the purchasing department of the city of Wichita Falls, testified that she did not make a special trip to Fort Worth for Mr. Chewning for the purpose of obtaining a copy of the plans and specifications of the new courthouse to be built at Graham, but, inasmuch as she was going to Fort Worth, he asked her to see about them; that he gave her a check, and she went to Fort Worth; that she went to the office of Withers & Thompson to see about getting the plans, and had a talk with Mr. Thompson; that she asked him if he had the plans available for the Graham courthouse, and that he said they had made up their mind not to give them to any exchange of contractors' association, and that she told him she appreciated his position in this particular case in not wanting the exchanges to have them, but that she had brought a check from Mr. Chewning, and that Mr. Chewning had communicated with him about a set of the plans; that he said he had written Mr. Chewning a letter and explained the matter to him; that he said there might be an injunction, and that two or three things might discourage Taylor Bros. in bidding on this work; that no question was raised about the check being good, and that she told Mr. Thompson that, inasmuch as the bid was to be let on the 12th, there would only be eleven days to figure on the plans, and Mr. Thompson told her he would write Mr. Chewning the next day; that she thanked him for his courtesy and left; that she understood that Mr. R. L. Taylor later went to Fort Worth and talked with Withers & Thompson, as shown heretofore.

The bid of James T. Taylor, accepted by the commissioners, was for $297,772, and the deposit of $15,000 was about 3 per cent. of the bid, and we think it was "approximately" correct.

The evidence further shows that there were seven bidders, ranging from the bid of D. N. Leaverton, Lubbock, Tex., for $324,700, to the bid of James T. Taylor, Fort Worth, for $297,772. We do not think there is any merit in the contention that Taylor Bros. of Wichita Falls was prevented from submitting a bid. Plaintiffs also complain of that paragraph of the plans under "cabinet work and furniture" as unreasonable and tending to stifle competition. The paragraph reads as follows:

"Persons or firms bidding on this work shall be actually engaged in the manufacture of this class of work, and shall have been for a period of not less than five years."

There is also a provision which reads:

"The general contractor shall include in his main proposal or bid all work called for under this heading and shall furnish all material of every description necessary to make the job complete in every detail as contemplated in the drawings and specifications and the entire work shall be delivered and set up in the building ready for use."

Since the general contractor was required to bid on all of the material of every description to make the job complete in every detail, we cannot say that Taylor Bros., or any other possible bidder, was induced not to bid because of this requirement. It is argued that the reason for that requirement was, that the wood for the benches for the judges and other immovable furniture should be made out of material which had been thoroughly dried and tested; and that the architects thought, which thought was adopted by the commissioners' court, that five years' experience in the making of furniture was necessary to insure Young county that it would have immovable furniture of a material that had been thoroughly tested. In the case of Haralson v. City of Dallas (Tex. Civ. App.) 14 S.W.(2d) 345, 347, it is said:

"Appellant makes the further contention that the requirement in the specifications for a chemical analysis of cast iron from which pipes are to be manufactured, that is, to conform to a prescribed maximum and minimum content of sulphur, phosphorous, manganese and silicon, restricted competition, violated the competitive provision of the city charter, and was against public policy, for the reason that the United States Cast Iron Pipe & Foundry Company, the successful bidder, enjoyed such favorable freight rates that no other manufacturer could compete with it for the work. Appellant does not contend that the test was placed in the specifications for the purpose of restricting competition or for any fraudulent purpose, the contention being that, although the test was prescribed in good faith, its effect was to restrict competition. This argument is based upon the assumption (which is not borne out by the

facts) that the successful bidder was the only manufacturer in the United States that could compete for a contract to furnish the pipe required.

"The trial court found, with ample evidence to sustain the finding that the chemical analysis test did not stifle competition, that the successful bidder was not the only manufacturer in the United States that was able and willing to perform the work and furnish pipe in accordance with the specifications, and this is conclusively established by the fact that there were six bids for the entire job that contemplated the use of cast-iron pipe fulfilling the chemical analysis test. The object of the authorities in prescribing this test was to secure a high grade of cast iron, absolutely necessary, in view of the purpose and use to be served."

■ The Constitution does not provide when the newly elected commissioners shall take office or be eligible to take office. Article 17, Rev. Civ. Statutes of 1925, act of 1921, provides that the newly elected officers shall take their official oath and enter upon and assume the duties of their respective offices on the 1st day of January following the last general election, or as soon thereafter as possible. This provision is well within the power of the Legislature, and we can see no reason to sustain the contention that the newly elected commissioners, elected in the general election of 1930, ought to have been permitted to take the oath and qualify and enter upon their duties as commissioners prior to January 1, 1931.

We have carefully gone over the record in this case and fail to find any reversible error. Therefore the judgment of the trial court is in all things affirmed.

On Appellants' Motion for Rehearing.

Appellants have filed a rather lengthy motion for rehearing, and we will proceed to discuss certain grounds urged in said motion.

■ The Constitution (Const. art. 5, § 18) makes the commissioners' court the governing body for the county business proper. Jernigan v. Finley, 90 Tex. 205, 38 S. W. 24, by the Supreme Court. The Legislature of Texas saw fit, relative to the delegation of power and authority to the commissioners' courts, to use the following language:

"Each commissioners court shall * * * provide and keep in repair court houses, jails and all necessary public buildings * * * said court shall have all such other powers and jurisdiction, and shall perform all such other duties, as are now or may hereafter be prescribed by law." Article 2351, Rev. Civ. Statutes of 1925.

In the case of Stone v. City of Wylie (Tex. Com. App.) 34 S.W.(2d) 842, 843, it is said:

"It is announced by Corpus Juris, vol. 43, § 317, p. 306, as a settled rule that courts will not interfere with the exercise of discretionary power upon the part of the governing body of a city except in a clear case of abuse, and that where a discretion is validly vested in a municipal body, or officials, it will be assumed that the duties are properly and lawfully performed."

■ It is the duty of commissioners' courts to "provide" courthouses and other necessary public buildings, and in connection with this power and authority, and as a component part thereof, the right is given to levy taxes for courthouse purposes. Article 2352 provides that "said court shall have the power to levy * * * not to exceed twenty-five cents on the one hundred dollar valuation in any one year" for public building purposes; article 7048 provides that "each commissioners court shall have power to levy * * * for the erection of public buildings * * * not to exceed twenty-five cents on the one hundred dollar valuation in any one year."

The Legislature did not provide that the commissioners' court should know the exact amount of the debt before it could levy the tax; the only limitation being the amount of the tax for that particular purpose. The 25-cent tax referred to in the statute is authorized by section 9 of article 8 of the Constitution, and is a "limitation upon the power of the legislature to authorize counties to impose taxes for such purposes." Mitchell County v. Bank, 91 Tex. 361, 43 S. W. 880, 883, by the Supreme Court.

Power and authority of the commissioners' court in respect to making tax levies for courthouse purposes was recognized in Cresswell Ranch & Cattle Co. v. Roberts County, 27 S. W. 737, by Judge Stephens of this court. The tax order of December 8, 1930, was and is a component part of all other orders that had been entered, and were to be entered, in respect to the creation of the indebtedness which is to be evidenced by these interest-bearing warrants. We know no good reason, and appellants have cited us to none, to show that the commissioners' court of Young county did not have authority to pass the tax order of December 8, 1930. The tax levy was made on December 8th; the order of December 20th merely appropriated that levy. Each and every order was necessary in order to complete the public record of the proceedings, which show the authorization and creation of a valid debt for courthouse purposes in Young county. The fact that in the instant case the issuance of bonds is not involved does not and cannot affect the validity of the tax. By article 2368, Rev. Civ. Statutes, the commissioners' court is required to award contracts upon competitive bids, and which was done in respect to the contract in-

volved in this suit, as shown by the testimony of appellees' witnesses. The commissioners' court adopted the plans and specifications. After the plans and specifications were adopted, full four weeks' notice of intention to award a contract, based upon those plans and specifications, was given, as required by article 2368. As declared by Judge Brown, in Mitchell County v. Bank, supra, and ratified by the United States Supreme Court in Wade v. Travis County, 174 U. S. 506, 19 S. Ct. 715, 43 L. Ed. 1060, and also by the Texas Supreme Court in City of Aransas Pass v. Keeling, 112 Tex. 399, 247 S. W. 818, 821, the legislature "has the power to make all such 'provision' for counties and cities, or it may leave it to the officers of such corporations to make it when the debt is created; if made by either it [the debt] is sufficient."

Appellants say in their motion for rehearing: "We cannot conceive how your Honors can hold that the power to tax in the creation of a debt can come into existence until the amounts of the debt, its maturity, etc., have been determined."

The exact amount of a debt, including interest thereon and time of maturity, is rarely known at the time the debt is authorized. There is always an element of uncertainty as to the maintenance of subsisting taxable values throughout the life of either a bond or warrant debt. If values are increased, then a reduction in the tax rate is permissible and authorized, so long as it does not impair the obligation of a contract. This principle was recognized by the Supreme Court in City of Aransas Pass v. Keeling, 112 Tex. 339, 348, 247 S. W. 818, in an able opinion by Justice Greenwood.

In the case of Bloodworth v. Rhea, 280 S. W. 1070, writ of error refused, opinion by Justice Dunklin, this court sustained the validity of certain school bonds, and one of the reasons advanced by appellants in that case was that the proposition for the issuance of the bonds did not distinctly specify the rate of interest, but merely stated that the bonds would bear interest not exceeding 6 per cent.

■ The order of December 8, 1930, by the commissioners' court, levied a tax of 25 cents on the $100 valuation of all taxable property for the current year, but further provided that:

"During each year thereafter while any of said warrants are outstanding and unpaid, and at the time other county taxes are levied in each of said years, there shall be computed and ascertained what rate of tax based upon the latest approved tax rolls of said county will be necessary, requisite and sufficient to fully make, raise, and produce in each of said years the amount of principal necessary to be raised for that year, plus the interest maturing in said year upon the amount of this series of warrants outstanding and unpaid and to provide ten per cent. attorney's fees in case of default," etc.

We think this levy was sufficient to cover the life of these bonds.

■ Appellants again urge that the provision of the specifications, to the effect that "bids on the furniture and cabinet work" were limited, in that "persons or firms bidding on this work shall be actually engaged in the manufacture of this class of work, and shall have been for a period of not less than five years," tends to stifle the bidder. It cannot be successfully contended that any offer to contract for a given service does not itself limit those who are available to perform the service. The statutes limit those who can contract with the county by requiring a posting of a surety bond. The general contractor in the instant case was required to bid on all the material and make the job complete in every detail. The specifications did not recognize as a party to the contract any subcontractor whatsoever, but gave the general contractor the right to receive bids from subcontractors who could meet, with respect to cabinet work and furniture, the reasonable requirement of being manufacturers thereof for a period of five years. All that is required by law of the commissioners' court is that the job be submitted to competition. A substantial compliance with the statutory requirement is all that is required. Haralson v. Dallas (Tex. Civ. App.) 14 S.W. (2d) 345, 347; Headlee v. Fryer (Tex. Civ. App.) 208 S. W. 213; article 2368, Rev. Civ. Statutes.

In Headlee v. Fryer, supra, dismissed by the Supreme Court by agreement, the court held that all that was required under articles 2268a and 2268b was that the commissioners' court "must take such steps as are reasonably and fairly calculated to carry out the act." We think the undisputed evidence shows, as found by the trial court and by this court, that there was fair and proper competition as required by article 2368. There was sharp competitive bidding by seven responsible contractors, and the bid of the lowest bidder was accepted. It has always been the law that a substantial compliance with the terms of a contract enables the party performing to enforce the same. Linch v. Lumber & Grain Elevator Co., 80 Tex. 23, 15 S. W. 208, by the Supreme Court.

In Dupuy v. Schilling (Tex. Civ. App.) 27 S.W.(2d) 323, application for writ of error dismissed by the Supreme Court, it was held that a finding where cost of remedying defects and supplying omissions was $200 did not preclude the finding of substantial performance, where the contract price was $1,725.

In the instant case, the bid was approximately $300,000, and the cabinet work and furniture complained of by appellants was

but relatively a very small part thereof, and, even if the bidding on the cabinet work and furniture was stifled, which we do not believe was done, then the contract as to the other part of the erection of the courthouse should be approved. However, we do not believe that the provision in the contract complained of, as shown by the record, tended to stifle competition.

There are other grounds urged by appellants, but we do not find that any sufficient grounds are offered to disturb our former opinion, which we think was correct. Therefore the motion for rehearing is overruled.