

# THE ATTORNEY GENERAL

## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

April 2, 1970

Honorable Joe Resweber
County Attorney
Harris County Courthouse
Houston, Texas

Opinion No. M- 605

Re: Authority of Commissioners
Court to enter into contract
with the United States for a
Concentrated Employment
Project under the MDTA and
the EOA.

Dear Mr. Resweber:

In your recent request for an opinion you state:

"This office has on this date been requested
by the Commissioners Court to render an opinion as
to whether or not the Commissioners Court has the
authority to enter into a contract with the United States
Department of Labor for implementation of a 'Con-
centrated Employment Project' under the Manpower
Development and Training Act (MDTA) and the Eco-
nomic Opportunity Act (EOA). Enclosed are a copy
of the proposed contract, a document entitled, 'United
States Department of Labor, Manpower Administra-
tion, General Provisions for Cost-Reimbursement Type
Contracts' and a document entitled 'Special Provisions. '

"In the light of your recent opinion, No. M-264,
dated August 2, 1969, relating to the Economic Oppor-
tunity Act, in which you declared that no constitutional
or statutory authority could be found for commissioners'
courts in Texas to engage in 'such community projects
as day care and pre-school, literacy courses and other
adult basic education, legal advice and representation,
consumer education, <u>employment and manpower training</u>,
assistance to small neighborhood businesses and many
others, ' a serious question arises as to whether or not
the Commissioners Court of Harris County can enter into

-2883-

such a contract as is now proposed under both the Economic Opportunity Act and the Manpower Development and Training Act, whereby the Court would participate as the local operating agency for the federally underwritten activity therein contemplated. In your said Opinion No. M-264, you further stated that 'Commissioners' Courts are limited strictly to County business' and that 'substantial constitutional and statutory amendments would be required in Texas before OEO would be assured that commissioners' courts could undertake either directly or by contract with other organizations the wide range of activities and projects listed and required by such federal agency. "

The special provision of the contract in question provides in part as follows:

"CLAUSE NO. 1 STATEMENT OF WORK
(Work schedule)

"I. The Contractor, Harris County Commissioner's Court, Houston, Texas, will be responsible for accomplishing the tasks set forth in this statement of work to be performed under this contract. It is understood that parts of the program will be carried out through subcontracts with Texas Employment Commission, Vocational Guidance Service, Houston Jobs for Progress and other agencies and organizations as necessary to perform the work set forth in this statement.

"II. The major objective of this project is to provide employment and substantial expansion of employment and work-training opportunities for residents of a selected high-unemployment area in Houston, Harris County, Texas. More specifically, the Contractor will link together and administer various manpower development and employment services, encouraging and utilizing the cooperative efforts of industry, community and labor organizations, private non-profit and public agencies to provide pre-employment work orientation, training and employment placement assistance to approximately 1,900 un-employed and under-

employed residents of the target area(s), and in the
period of this Contract, complete such preparations
and place in meaningful employment at least 1, 250
such residents. "

The Contract reflects that a substantial part of the $2, 270, 113 which
is to be spent on the program will be paid (at an hourly rate) to the job trainees
during their training period.  The remainder is spent on the salaries of super-
visory personnel and other operational costs of the program.

Since receiving your original request for an opinion we have been
advised that the contract in question has been amended to expressly limit
the program to

". . . the paupers, the indigent, the needy, and the poor
who are unemployed or underemployed, and who are
residents of a highly selected unemployment area in
Houston, Harris County, Texas.  Such residents, for
whose support the county has been traditionally re-
sponsible, fall within the economic qualifications set
up for this project by the federal government. "

We have concluded that the Commissioners Court of Harris County
does have the authority to enter the contract in question in the discharge of its
statutory duty toward the above mentioned citizens.  Our conclusion is based
upon Article 2351, V. C. S. , which provides, in part, as follows:

"Each Commissioner's Court shall . . .

". . . .

"11.  Provide for the support of paupers . . .
residents of their county, who are unable to support
themselves. "

In our opinion the contract in question constitutes a lawful exercise
of the duty of the Commissioners Court to "provide for the support of paupers, "
within the meaning of the above quoted provisions of Article 2351.

In connection with this statute we consider the constitutional con-
cepts found in Section 2 of Article XI of the Constitution of Texas, which
authorizes the Legislature to provide for the establishment of poor houses
and farms, and Section 8 of Article XVI of the Constitution, which authorizes

each county to "provide, in such manner as may be prescribed by law,
a Manual Labor Poor House and Farm, for taking care of, managing, em-
ploying and supplying the wants of its indigents and poor inhabitants."

Additional statutory authority for some of the activities of the
Commissioners Court which may become necessary under the contract in
question may be found in Articles 2372e-2, V.C.S. and Article 5221a-3,
V.C.S. Article 2372e-2 authorizes the Commissioners Court to contract
for or lease or rent office space for the purpose of aiding and cooperating
with the agencies of the federal and state government engaged in the ad-
ministration of relief to the unemployed and needy people of the state and
to pay the utility bills and rent out of the county general funds. Article
5221a-3 authorizes the Commissioners Court to enter contracts with the State
employment service for the purpose of establishing or maintaining a free
public employment service within the county upon such terms and conditions
as the parties may agree upon. The statute further provides that the Com-
missioners Court may obligate the county to pay for rent and salaries, and
for the purchase of the equipment, "or such other purposes as may be deemed
advisable by said Commissioners Court . . ."

The above quoted constitutional and statutory provisions, involving
the advancement of public welfare and being regarded as humanitarian and
beneficial, are subject to a liberal or comprehensive construction to promote
the public interest or welfare. 82 C.J.S. 916, Statutes, Sec. 387, note 49;
70 C.J.S. 12, Paupers, Secs. 3 and 4; 50 Am. Jur. 420-421, Statutes,
Secs. 395 and 396. See Board of Ins. Com'rs. v. Great Southern Life Ins.
Co., 150 Tex. 258, 239 S.W. 2d 803, 809 (1951).

The answer to your question depends upon the construction of the
language, "provide for the support of paupers," found in Article 2351, and
more specifically, whether the job training program embraced in the con-
tract in question constitutes "support" and whether the citizens for whose
benefit the program is established constitute "paupers," within the meaning
of the statute.

The word "support" is a word of "general welfare" and is defined
in 83 C.J.S. 906, "Support," as follows:

> "As applied to persons, the word 'support' is
> a general term, of broad signification, and like most
> words, it has a variety of meanings. It is not a word
> of art, but, rather, a word which has a relative mean-

ing, and its meaning is necessarily flexible . . . As
a noun, the word 'support,' as used with respect to
persons, means maintenance; subsistence; sustenance;
the supply of necessaries; a livelihood; a living, a
source or means of living; that which furnishes liveli-
hood to a person or family . . . "

The direct cash income received by the job trainees clearly would
constitute "support." In our opinion, the benefits of job training and job
placement also would constitute "support." The basic purpose of the project
is to provide a type of support which will render the indigent independent of
support. Black's Law Dictionary defines "pauper" as "a person so poor that
he must be supported at public expense." We believe that the recipients of
the support above defined may be properly considered as paupers.

In determining the meaning of the words "support" and "paupers" we
are required to take the current concepts of those terms, and not necessarily
those concepts which existed at the time the statute was first written.

In Associated Indemnity Corp. v. Oil Well Drilling Co. , 258 S. W. 2d
523, 529 (Tex. Civ. App. 1953, affirmed Tex. Sup. , 264 S. W. 2d 697), the
Court said:

"Moreover, we believe that our law, even our
statutory law, is a living thing capable of adjustment
within certain limits to meet varying circumstances.
Our law is not forever and immutably fixed like the
rules of syntax of the ancient dead Latin and Greek
languages. An example of what we mean is our ex-
emption statute, Art. 3832, Subdivision 10, V. A. C. S.
When passed in 1870 . . . the legislature did not have auto-
mobiles in mind when it used the word 'carriage.' Yet
our courts had no difficulty in holding that the word
'carriage' must be interpreted to include automobiles.
Willis v. Schoelman, Tex. Civ. App. , 206 S. W. 2d
283. Our views on this subject are all the more ap-
plicable to a statute like the one now under considera-
tion, which admittedly grants discretionary powers to
the Board. "

In Accord, 50 Am. Jur. 224, Statutes, Sec. 237, and cited cases.

Following the reasoning above quoted, it seems clear that the indigent citizens involved in the project in question may be properly classified by the Commissioners Court as "paupers" and that the project constitutes "support" within the meaning of Article 2351.

It will be noted that the facts involved in Opinion M-264, supra, were quite different from those in the question now before us. In that opinion we emphasized that we could find no statutory or constitutional authority for the participation of the Commissioners Court in the wide range of activities involved in the proposed contract with the office of Economic Opportunities program; namely, day care and pre-school, literacy courses and other adult basic education, legal advice and representation, consumer education, assistance to small neighborhood businesses, as well as the employment and man power training program. Clearly, those activities would extend the Commissioners Court far beyond the function of "providing for the support of paupers." Indeed, Paragraph 11 of Article 2351 was never suggested as a source of authority for such a wide range of activities.

Attorney General's Opinion No. O-2474 (1940) and the authorities which were cited in that opinion, together with recent cases to which we will refer hereinbelow, are closely in point with the matter here considered and are applicable thereto. The question involved in Opinion No. O-2474 was whether the Commissioners Court may legally cause to be paid out of county funds the sum of $3.50 per month per person employed in the WPA sewing room. This contribution was to be used for the purchase of textiles from which garments would be made in the sewing room for distribution to poor and destitute families. After discussing the above mentioned sections of the Constitution we said:

> "In our opinion the facts above stated and assumed to be true would support a finding of the Commissioners Court that the employees in the sewing room, as well as those receiving the articles of clothing, are so needy and dependent as to come within the authority provided in Section 11 of Article 2351, Revised Civil Statutes.

> "Considering the humanitarian purpose of this statute, we do not believe it should be given a severe and literal construction. Rather, it should be given at least a fairly liberal construction to the end that its wholly desirable purpose shall at least be possible of achievement . . .

"We do not believe that the statute was meant to require a man to be reduced to pauperism in the starkest meaning of the word before assistance may be extended to him.

"These projects known as WPA sewing rooms actually dispense aid in two forms: (1) direct aid to those who receive the garments, and (2) indirect aid in the way of employment for the women operating the machines. Article 2351 does not require the assistance to be given in any particular manner. In many instances it will be much more wholesome and desirable for it to be given in the nature of employment.

"Furthermore, we do not believe that a county's obligation to extend aid is necessarily destroyed the moment the Federal Government gives its assistance. There is nothing to prevent the county from providing for a part of such support, the Federal Government also contributing. If the Commissioners' Court finds that those to whom the clothes are given are dependent upon public relief, either direct or indirect, for living necessities, or that the sewing room employees would probably become subjects of direct relief if the projects should be terminated, in our opinion the contributions requested of the county may be made. Our opinion, of course, would be to the contrary if the Commissioners' Court finds that such facts are not true." (Emphasis added.)

We are well aware of the authorities holding that the Commissioners Courts are courts of limited jurisdiction and are without powers except those conferred upon them by the Constitution or statutes or necessarily implied therefrom. The case of Canales v. Laughlin, 147 Tex. 169, 214 S.W. 2d 451 (1948), which was quoted and relied upon by this office in Opinion No. M-264, supra, while holding that the Commissioners Court exceeded its authority in the matter there involved, recognized the existence of implied powers. At page 453, the Courts said:

"We must therefore examine the statutes to ascertain whether expressly or by necessary implication the Commissioners Court was authorized to do what it did in this case."

The language used by the Supreme Court in Pritchard and Abbott v. McKenna, 350 S.W.2d 333, 334 (1961) is particularly applicable to the facts disclosed by your opinion request. There the Court said:

> "Admittedly the Commissioners Court is not expressly clothed with constitutional or statutory authority to contract for the services detailed in this agreement, but we think that the authority is implied from the powers that have been expressly granted to and the duties imposed upon this body by law."

Paragraph 11 of Article 2351, in broad and unequivocal language, grants the authority and duty to "provide for the support of paupers," and, as we view the decisions, the courts will not interfere with the discretion of the Commissioners Court in carrying out that duty. Rogers v. County of Taylor, 368 S.W.2d 794 (Civ. App. 1963, error ref. n.r.e.); Anderson v. Parsley, 37 S.W.2d 358, 365 (Civ. App. 1931, error ref.). In Commissioners Court of Madison County v. Wallace, 118 Tex. 279, 15 S.W.2d 535, 537 (1929) the Court said:

> "The commissioners' court must have authority of law for its contracts, and when the authority is given, a reasonable construction of it will be given to effect this purpose."

In Attorney General's Opinion No. O-2217 (1940) this office held that Paragraph 11 of Article 2351 authorized the Commissioners Court to lease a building to be used as a warehouse to store surplus commodities, such as foods and clothing furnished by the Federal Government, to be issued to the indigents of the county, and to pay $100 per month for the lease of such building. We stated:

> "When the Commissioners' Courts are expressly given the power and duty to 'provide for the support of paupers,' by necessary implication they were clothed with the authority to do all the incidental things necessary to provide for their support."

We further pointed out that the Commissioners Courts "were given the sound discretion of determining those whom they were required to provide for under the terms of the statute." We further held that the Commissioners Court had authority (necessarily implied by said statute) to employ necessary

personnel "to properly sift out those entitled to such relief and to investigate and ascertain the extent and amount of need." The same opinion construed Article 2372e-2 (supra) to authorize the Commissioners Court to pay utility bills for the warehouse involved. It is the policy of this office and the courts to follow earlier Attorney General Opinions on the subject unless clearly wrong. Attorney General Opinion No. O-1659 (1939); Thomas v. Groebl, 147 Tex. 70, 212 S. W. 2d 625 (1948).

We have examined the contract in question, and, while it involves a complicated approach to the problem, all of the provisions, in our opinion, are reasonably related to the statutory purpose of "providing for the support of paupers . . . residents of their county who are unable to support themselves." The Contract provides in Section III (3) that the Contractor, Harris County Commissioners Court, "will, through a subcontract with the Texas Employment Commission, recruit the residents of the target area for participation in the project . . ." Thus, the discretion of determining those whom they were required to provide for under Article 2351, paragraph 11, is left to the Harris County Commissioners Court, which we must presume will act lawfully and within the authority granted to it.

In view of the vast complexities of modern life, especially in the realm of public welfare and especially in large cities, this office would not be inclined to declare to be unlawful or unauthorized the particular method here employed by the Commissioners Court of Harris County to carry out its statutory duty under the provisions above quoted. Therefore, we hold that the Commissioners Court of Harris County may lawfully enter the contract to administer the job training program described in your letter and in the attachments.

## SUMMARY

Under the provisions of Paragraph 11 of Article 2351, V. C. S. , the Commissioners Court may enter into a contract with the United States government to administer the Concentrated Employment Project under the Manpower Development and Training Act (MDTA) and the Economic Opportunity Act (EOA).

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

-2891-

Prepared by Ralph R. Rash
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Acting Co-Chairman

John Grace
Earl Hines
Sam Jones
Robert C. Flowers

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant