## DUPUY et ux. v. SHILLING et al.
### No. 1921.

Court of Civil Appeals of Texas. Beaumont.
March 28, 1930.

Rehearing Denied April 9, 1930.

Jas. A. Harrison and M. S. Duffie, both of Beaumont, for appellants.

Crook, Lefler, Cunningham & Murphy, of Beaumont, for appellees.

WALKER, J.

■■ As a part of this opinion, we adopt the statement of the nature of the suit made by us upon the former appeal. Dupuy v. Shilling; 298 S. W. 934. On that appeal the jury found a substantial performance of the contract, which holding we reversed on the

ground that it was without support. Under the verdict of the jury it would have required more than one-third of the contract price to complete the building contract and make good the failure of full performance by the contractor. Upon this trial the jury found that the contractor furnished material and labor in substantial compliance with the written contract sued upon, and that the reasonable cost of remedying the defects and supplying the omissions was $200. On the verdict judgment was entered in appellees' favor for the balance due with foreclosure of lien, as prayed for. Under Harrop v. Loan Co. (Tex. Civ. App.) 204 S. W. 878, 883, the finding of $200 relieves the case of the manifest error on the former appeal. In that case the contract price was $1,400 and the amount necessary to complete it was $263. In this case the contract price was $1,725, and under the jury's verdict the cost of the defects and omissions amounted only to $200.

The following testimony by appellee H. B. Oxford was material on the issue of substantial performance:

"At the time I was interrupted by Judge Harrison, I believe I was telling about the time Mr. Shilling and I went over to Mr. and Mrs. Dupuy's and offered to make the work good, or make it entirely to her satisfaction: I will go ahead from there and tell the rest of it. Well Mrs. Dupuy pointed out several little minor things there that were done wrong, but the main objection seemed to be the brick work, and I examined it and we offered to send a brick layer by the name of Williams, who was on another job down North Street over and tear down the brick work and rebuild it, and I thought that was our agreement, and the next day Mr. Williams went over,—I say the next day, it might have been that same day, or two days later, any way Mr. Williams went over to work over the brick work and Mrs. Dupuy or Mr. Dupuy positively refused to let him do anything at all and wouldn't let him continue on with the work or make the necessary changes. That, with the exception of a complaint about some latches on the windows,—I don't believe there was a lift and a little latch at the top of the windows,—and the ridge row hadn't been put on, and the pieces of tin flashing over the windows hadn't been put on, and as well as I remember, that was about the only complaint that was made. There might have been some little complaint about the floor, but I don't remember now just what that was. I believe there was a complaint about the columns. The present columns, I believe they claimed, were not large enough and should be larger. Well all of that was only small items and we agreed to fix them, or leave it to an arbitration, we wanted to fix the thing up and get them satisfied; we wanted our customers satisfied,

and you might say that they were our neighbors, living just across the track from us, and they had our money and material in it, and naturally we wanted to have it settled, and we wanted to fix anything if there was any complaint: We are still in that mood: We are still ready to fix it: We are still ready, anxious and willing to fix it right now: We are ready right now to do it.

"I have seen the specifications and plans a lot of times. I am familiar with them. There wasn't anything materially wrong with the work that I saw and which was pointed out to me, as compared with the plans and specifications, with the probable exception of the brick work: The work that I saw—everything—was done in a workmanlike manner, with the probable exception of the brick work, as I just stated, and Mr. Long, the brick mason had done that: That is the only real objection I could find."

The brick work referred to was under the porte-cochère.

There was other testimony to the effect that the contractor made a good-faith effort to comply with his contract. Under the testimony of Mr. Oxford just quoted, the defects were not pervasive and did not constitute a deviation from the general plan contemplated for the work, and the object of the parties in making the contract could have been carried out without difficulty by remedying the defects and supplying the omissions. Thus, the essential elements of substantial compliance were shown. As this issue was raised, the court did not err in refusing to instruct the jury to return a verdict for defendants, relieving their homestead of the lien claimed by appellees.

■ As a matter of law, appellants insist that the verdict should have been instructed in their favor because the contractor used certain old lumber in the performance of the building contract. This contention is overruled. The issue was raised that the contractor had the right to use this lumber, and if the use of the lumber was not in strict performance of the contract, yet, because of its character and nature, its use did not constitute a breach of the contract and a violation of its terms entitling appellants to an instructed verdict.

■ Appellants further insist that the finding of $200 was without support. They admit that there was evidence of the fair and reasonable cost of repairing the brick work and supplying the ridge roll on the roof of the building, but insist that there was no evidence of the reasonable cost of supplying the window flashings and the omitted hardware on the doors and windows and in repapering the rooms damaged by rain because of the failure of the contractor to put the ridge roll on the roof. This contention is based upon

the proposition that appellees rested under the burden of showing the fair and reasonable cost of remedying the defects and supplying the omissions. Under the Harrop Case just cited, it was held that the contractor "may sue on the contract, leaving it to the defendant to plead the claimed variance or deficiencies, and to the court to make proper reduction therefor." Writ of error was refused against this holding. If it is necessary for the defendant "to plead the claimed variance or deficiencies," it is certainly necessary that he support his plea with proof. Under the Harrop Case appellants clearly rested under the burden of pleading and proving the value of these items complained of.

■■ However, if appellees rested under this burden no error was shown. As to the windows complained of the issue was raised that they were not within the original contract. These windows were on a porch which, under the original contract, was to be screened. By agreement the contract was changed and windows substituted for the screen. On this issue appellants' witness Mr. Wellman, an experienced contractor, testified: "In making a screened in porch it is customary to close it in about the way I saw that porch out there—when there is not any glass in it. If you are just going to screen it in, then it is customary to build it the way this porch was built out there. These plans and specifications, in the first paragraph call for both a screened in porch and a glassed in porch and a bathroom and kitchenette. It calls for a glassed in porch and a screen porch. I didn't find any screened in porch out there at all. It is all enclosed: The glassed in porch is enclosed with windows: I believe the other had one or two windows, something like that, and the rest was weather boarded up. I didn't find any screened in porch out there at all. The glassed in porch is more expensive and better than a screened in porch. That glassed in porch was just about the same as though they had put it up for a screened in porch and then decided to make a glassed in porch out of it and put the windows in it instead of screening it up. It looks as though they started to screen the porch in the beginning and then later decided to put the glass windows in afterwards." The issue was clearly raised against appellants that appellee was under no obligation to supply the flashings and hardware for these windows without additional compensation. The issue was also raised against them that appellees were not responsible for the damage done to the paper by the rain because of the omission of the ridge roll from the roof. It should also be said that, under Mr. Oxford's testimony, the cost of the flashings and hardware omit-

ted from the windows was an insignificant item and the failure by appellees to offer direct proof of the cost would not vitiate the verdict.

■ Appellants requested certain questions on the issue of quantum meruit. They were properly refused because that issue was not in the case.

■ The trial court gave the jury the following definition of substantial compliance:

"You are instructed that to constitute substantial compliance the said J. A. Shilling must have in good faith intended to comply with said contract, and must have done so in the sense that the defects, if any, are not pervasive and do not constitute a deviation from the general plan contemplated for the work and are not so essential that the object of the parties in making the contract and its purposes cannot, without difficulty, be accomplished by remedying them.

"Substantial compliance permits such commissions or deviations from the contract as are inadvertent and unintentional, and are not due to bad faith, do not impair the structure as a whole, and can be remedied without doing material damage to other parts of the building in tearing down and reconstructing."

This was a correct definition of this term, directly applicable to the facts of this case, so no error was committed in its submission nor in the refusal of appellants' requested charge defining the term.

A careful review of the entire statement of facts has convinced us that the judgment has support and should be affirmed.

Affirmed.