**O. W. GRUN ROOFING AND CONSTRUCTION COMPANY, Appellant,**

v.

**Mrs. Fred M. COPE, Appellee.**

**No. 15401.**

Court of Civil Appeals of Texas, San Antonio.

Oct. 15, 1975.

William M. Porter, San Antonio, for appellant.

Earle Cobb, Jr., Cobb, Thurmond & Bain, Inc., San Antonio, for appellee.

CADENA, Justice.

Plaintiff, Mrs. Fred M. Cope, sued defendant, O. W. Grun Roofing & Construction Co., to set aside a mechanic's lien filed by defendant and for damages in the sum of $1,500.00 suffered by plaintiff as a result of the alleged failure of defendant to perform a contract calling for the installation of a new roof on plaintiff's home. Defendant, in addition to a general denial, filed a cross-claim for $648.00, the amount which plaintiff agreed to pay defendant for installing the roof, and for foreclosure of the mechanic's lien on plaintiff's home.

Following trial to a jury, the court below entered judgment awarding plaintiff $122.60 as damages for defendant's failure to perform the contract; setting aside the mechanic's lien; and denying defendant recovery on its cross-claim. It is from this judgment that defendant appeals.

The jury found (1) defendant failed to perform his contract in a good and workmanlike manner; (2) defendant did not substantially perform the contract; (3) plaintiff received no benefits from the labor performed and the materials furnished by defendant; the reasonable cost of performing the contract in a good and workmanlike manner would be $777.60. Although the verdict shows the cost of proper performance to be $777.60, the judgment describes this finding as being in the amount of $770.60, and the award of $122.60 to plaintiff is based on the difference between $770.60 and the contract price of $648.00.

By its first point, defendant questions the factual and legal sufficiency of the evidence to support the jury's findings. The argument under this point (defendant's brief contains no statement following each point), is limited to the contention that all of the elements of "substantial performance" were established.

We find no assignments of error in the motion for new trial specifically calling the trial court's attention to the complaint that the evidence is insufficient to support the finding that defendant did not perform the contract in a good and workmanlike manner (issue no. 1), or that the finding that defendant did not substantially perform the contract (issue no. 2) was contrary to the overwhelming weight and preponderance of the evidence. The motion for new trial does assert that the trial court erred in overruling defendant's motion for judgment n. o. v. because "a. The jury disclosed by their answers to the special issues that they were in sympathy with the Plaintiff and that their answers to the questions proposed by the Court were not founded on any evidence or upon wholly insufficient evidence," and "b. Defendant should have been granted Judgment as a matter of law because the evidence was legally sufficient for such a verdict." Assuming that this portion of the motion for new trial raises the question of factual sufficiency of the evidence, it amounts to no more than a complaint that the verdict is contrary to the evidence. The assignment is multifarious, complaining of the sufficiency of the evidence to support the answers to each of five issues and will not support a factual insufficiency of the evidence point on appeal. Rule 322, Tex.R.Civ.P. (1967).

The only questions, therefore, which we can consider under defendant's first point are that there is no evidence to support the finding that defendant did not perform in a good and workmanlike manner and that the evidence establishes as a matter of law that defendant substantially performed the contract. In considering these "no evidence" points, we look only to the evidence supporting the verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1952).

The written contract required defendant to install a new roof on plaintiff's home for $648.00. The contract describes the color of

the shingles to be used as "russet glow," which defendant defined as a "brown varied color." Defendant acknowledges that it was his obligation to install a roof of uniform color.

After defendant had installed the new roof, plaintiff noticed that it had streaks which she described as yellow, due to a difference in color or shade of some of the shingles. Defendant agreed to remedy the situation and he removed the nonconforming shingles. However, the replacement shingles do not match the remainder, and photographs introduced in evidence clearly show that the roof is not of a uniform color. Plaintiff testified that her roof has the appearance of having been patched, rather than having been completely replaced. According to plaintiff's testimony, the yellow streaks appeared on the northern, eastern and southern sides of the roof, and defendant only replaced the non-matching shingles on the northern and eastern sides, leaving the southern side with the yellow streaks still apparent. The result is that only the western portion of the roof is of uniform color.

When defendant originally installed the complete new roof, it used 24 "squares" of shingles. In an effort to achieve a roof of uniform color, five squares were ripped off and replaced. There is no testimony as to the number of squares which would have to be replaced on the southern, or rear, side of the house in order to eliminate the original yellow streaks. Although there is expert testimony to the effect that the disparity in color would not be noticeable after the shingles have been on the roof for about a year, there is testimony to the effect that, although some nine or ten months have elapsed since defendant attempted to achieve a uniform coloration, the roof is still "streaky" on three sides. One of defendant's experts testified that if the shingles are properly applied the result will be a "blended" roof rather than a streaked roof.

In view of the fact that the disparity in color has not disappeared in nine or ten months, and in view of the fact that there is testimony to the effect that it would be impossible to secure matching shingles to replace the nonconforming ones, it can reasonably be inferred that a roof or uniform coloration can be achieved only by installing a completely new roof.

The evidence is undisputed that the roof is a substantial roof and will give plaintiff protection against the elements.

■ The principle which allows recovery for part performance in cases involving dependent promises may be expressed by saying that a material breach or a breach which goes to the root of the matter or essence of the contract defeats the promisor's claim despite his part performance, or it may be expressed by saying that a promisor who has substantially performed is entitled to recover, although he has failed in some particular to comply with his agreement. The latter mode of expressing the rule is generally referred to as the doctrine of substantial performance and is especially common in cases involving building contracts, although its application is not restricted to such contracts.

■■ It is difficult to formulate definitive rule for determining whether the contractor's performance, less than complete, amounts to "substantial performance," since the question is one of fact and of degree, and the answer depends on the particular facts of each case. But, although the decisions furnish no rule of thumb, they are helpful in suggesting guidelines. One of the most obvious factors to be considered is the extent of the nonperformance. The deficiency will not be tolerated if it is so pervasive as to frustrate the purpose of the contract in any real or substantial sense. The doctrine does not bestow on a contractor a license to install whatever is, in his judgment, "just as good." The answer is arrived at by weighing the purpose to be served, the desire to be gratified, the excuse for deviating from the letter of the contract and the cruelty of enforcing strict adherence or of compelling the promisee to re-

ceive something less than for which he bargained. Also influential in many cases is the ratio of money value of the tendered performance and of the promised performance. In most cases the contract itself at least is an indication of the value of the promised performance, and courts should have little difficulty in determining the cost of curing the deficiency. But the rule cannot be expressed in terms of a fraction, since complete reliance on a mathematical formula would result in ignoring other important factors, such as the purpose which the promised performance was intended to serve and the extent to which the nonperformance would defeat such purpose, or would defeat it if not corrected. See, generally, 3A Corbin, Contracts Secs. 700–07 (1960).

Although definitions of "substantial performance" are not always couched in the same terminology and, because of the facts involved in a particular case, sometimes vary in the recital of the factors to be considered, the following definition by the Commission of Appeals in *Atkinson v. Jackson Bros.*, 270 S.W. 848, 851 (Tex.Comm. App.1925), is a typical recital of the constituent elements of the doctrine:

> To constitute substantial compliance the contractor must have in good faith intended to comply with the contract, and shall have substantially done so in the sense that the defects are not pervasive, do not constitute a deviation from the general plan contemplated for the work, and are not so essential that the object of the parties in making the contract and its purpose cannot, without difficulty, be accomplished by remedying them. Such performance permits only such omissions or deviations from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing.

See, also, *Dupuy v. Shilling*, 27 S.W.2d 323, 325 (Tex.Civ.App.—Beaumont 1930, writ dism'd); 10 Tex.Jur.2d, Building Contracts Sec. 21; 13 Am.Jur.2d, Building and Construction Contracts Secs. 41–43.

What was the general plan contemplated for the work in this case? What was the object and purpose of the parties? It is clear that, despite the frequency with which the courts speak of defects that are not "pervasive," which do not constitute a "deviation from the general plan," and which are "not so essential that the object of the parties in making the contract and its purpose cannot, without difficulty, be accomplished by remedying them," when an attempt is made to apply the general principles to a particular case difficulties are encountered at the outset. Was the general plan to install a substantial roof which would serve the purpose which roofs are designed to serve? Or, rather, was the general plan to install a substantial roof of uniform color? Was the object and purpose of the contract merely to furnish such a roof, or was it to furnish such a roof which would be of a uniform color? It should not come as a shock to anyone to adopt a rule to the effect that a person has, particularly with respect to his home, to choose for himself and to contract for something which exactly satisfies that choice, and not to be compelled to accept something else. In the matter of homes and their decoration, as much as, if not more than, in many other fields, mere taste or preference, almost approaching whimsy, may be controlling with the homeowner, so that variations which might, under other circumstances, be considered trifling, may be inconsistent with that "substantial performance" on which liability to pay must be predicated. Of mere incompleteness or deviations which may be easily supplied or remedied after the contractor has finished his work, and the cost of which to the owner is not excessive and readily ascertainable, present less cause for hesitation in concluding that the performance tendered constitutes substantial performance, since in such cases the owner can obtain complete satisfaction by

merely spending some money and deducting the amount of such expenditure from the contract price.

■■ In the case before us there is evidence to support the conclusion that plaintiff can secure a roof of uniform coloring only by installing a completely new roof. We cannot say, as a matter of law, that the evidence establishes that in this case that a roof which so lacks uniformity in color as to give the appearance of a patch job serves essentially the same purpose as a roof of uniform color which has the appearance of being a new roof. We are not prepared to hold that a contractor who tenders a performance so deficient that it can be remedied only by completely redoing the work for which the contract called has established, as a matter of law, that he has substantially performed his contractual obligation.

Point two asserts that the trial court erred in awarding plaintiff damages in the amount of $122.60 because such judgment is based on the answer to issue no. 5, and such special issue incorrectly referred to cost at the time of trial as opposed to the time of loss and, in any event, is not supported by any evidence.

■ Defendant did not object to the submission of issue no. 5 or to the wording of such issue. The defect in the wording of the issue was not timely called to the attention of the court and the error, if any, was waived. Rule 272, Tex.R.Civ.P. (Supp. 1975).

A witness testified that, at the time he installed the roof, a new roof of uniform color could have been installed for a cost of $648.00. He then testified that the cost of installing such a roof had increased by about 20% since that time. The figure at which the jury arrived in answer to issue 5 is equal exactly to $648.00 plus 20%, although the trial court, as already pointed out, lowered this amount by $7.00 for reasons not apparent from the record.

■ In its brief, defendant argues that it should be obvious that, in order to install another roof, it would not be necessary to replace the metal valleys, the metal trim and the Boston type ridges. This theory was not developed at the trial, a fact which defendant admits, at least tacitly, by its statement in the brief to the effect that the only testimony relating to the cost of replacing the roof was the testimony referred to in the preceding paragraph.

Point two is overruled.

■ Finally, defendant argues that it was entitled to judgment at least on the theory of quantum meruit on its cross claim because the evidence establishes as a matter of law that defendant installed a good weatherproof roof which was guaranteed for 15 years, and that such roof was installed properly in accordance with factory specifications and was of use and benefit to plaintiff.

The evidence does not conclusively establish that the shingles were properly installed. There is evidence to the effect that if shingles of this type are properly installed the result will be a roof which "blends," rather than a roof with clearly discordant streaks. In any event, the evidence does not conclusively establish that plaintiff has received any benefit from defendant's defective performance. As already pointed out, there is evidence that plaintiff will have to install a completely new roof. Because of defendant's deficient performance, plaintiff is not in a position which requires that she pay for a new roof.

■ Nor does the evidence conclusively establish that plaintiff accepted the claimed benefit. She complained immediately and has expressed dissatisfaction at all times. We cannot infer an acceptance from the fact that plaintiff continued to live in the house. She was living in the house before defendant installed the new roof, and we know of no rule which would require that, in order to avoid a finding of implied acceptance, plaintiff was obligated to move out of her home.

The judgment of the trial court is affirmed.